*In re* the petition of HENRY W. REMINGTON, for a writ of Habeas Corpus, and to be discharged from imprisonment.

Proceedings supplementary to the execution provided for by chap. 2, title 9, of the code of procedure, were intended as a substitute for a creditor's bill in chancery, under the old practice.

When an execution has been issued against the property of the judgment debtor and returned unsatisfied for want of real or personal property upon which a levy can be made, the creditor may apply to a circuit judge, county judge, or court commissioner for an order requiring the judgment-debtor to appear before the circuit judge or county judge, to make disclosure concerning his property.

It is essential, in order to give a circuit or county judge jurisdiction of this proceeding, that the judgment creditor should have in good faith issued his execution, and that the same should have been returned unsatisfied by the officer who should make reasonable and diligent search for real or personal property, not exempt from sale, upon which to levy.

When an execution was returned by the direction of the creditor or his attorney, "not satisfied, as there is no personal property to be found belonging to the defendant," the return was held to be insufficient to authorize supplementary proceedings.

A court commissioner has no authority to entertain this proceeding for a discovery of property by the judgment debtor, or to punish for contempt a disobedience of one of his orders. He can only grant the preliminary order for the examination before the judge. As a general rule, a court commissioner can exercise the power of a circuit judge at chambers. But the power exercised by a judge, under this statute, is not the ordinary power exercised by a judge at chambers at common law, but a new and special power conferred by the act.

A court commissioner is not authorized under the code to take jurisdiction of supplementary proceedings, enter up orders for the payment of money, the appointment of a receiver or to punish as for a contempt a person who has disobeyed his orders.

Therefore, when a commissioner entertained supplementary proceedings, and made such orders and attempted to punish by imprisonment as for a contempt the judgment debtor who disobeyed his orders, the imprisonment was held to be illegal, and the judgment debtor was discharged upon *habeas corpus*.

This was a writ of *certiorari* issued to Mr. Justice Cole to bring up the proceeding had before him in the above entitled case in vacation. The return and all the material facts are stated in the opinion of the court.

*Roys & Pinney*, for the petitioner.

*George B. Smith* and *Cutler & Ford*, contra.

*By the Court*, COLE, J. This was a petition for a writ of *habeas corpus*, to bring the petitioner before me with a view to his discharge from imprisonment, upon the grounds stated in the petition. The petitioner represents that he is in custody of Andrew Bishop, under sheriff of the county of Dane, and keeper of the jail in said county, for the supposed offence, to wit: For not obeying the orders of R. W. Lansing, court commissioner of said county, in certain proceedings supplementary to the execution in a case in the circuit court of said county, in which one Michael Harman is plaintiff, and the said petitioner and one Benjamin F. Perry are defendants; that such confinement is by virtue of a warrant, a copy of which was annexed to the petition; that to the best knowledge and belief of the petitioner, he is not committed or detained by virtue of any process issued by any court of the United States, or any judge thereof, or by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree; that he is advised by his counsel, and verily believes, that his imprisonment is illegal in this, to wit:

1. That the said R. W. Lansing had no authority or power, by law, to make the orders referred to in said warrant of commitment, and had no authority or power conferred upon him

to punish this petitioner for disobeying such orders, or to commit him for the alleged contempt mentioned in said warrant.

2. The said R. W. Lansing, as court commissioner of Dane county, had no jurisdiction to make any order in such proceedings supplementary to the execution, until it was clearly shown to him that a valid execution had been issued upon the judgment, and regularly returned, that no property, real or personal, could be found in the county, of either of the defendants, upon which to make the amount of the judgment, which does not appear to have been done in this case; and the petitioner states that on the judgment in the circuit court, upon which the supplementary proceedings mentioned in the said warrant were based, an execution had been issued to the sheriff of Dane county, bearing date on the 30th day of May, 1856, with the following return indorsed thereon by said sheriff, to wit:

"I have executed the within execution, by making diligent search, and no goods or chattels can be found. I therefore return this execution, nothing made.

(Signed.)            A. BISHOP, Sheriff.
       By John D. Welch, Under Sheriff.

And that on the 6th day of June, A. D. 1856, another execution was issued out of the clerk's office of said circuit court, tested on that day, and directed to said sheriff, who returned the same on the 11th day of June, 1856, with the following return indorsed thereon:

"By virtue of the within execution, I have this day levied upon two span of horses, the property of Henry W. Remington, one span sorrel, the other bay.

(Signed.)            A. BISHOP, Sheriff.
       By Butler Stowell, Deputy."
Dated 7th June, A. D. 1856.

Also, that on the 18th day of March, A. D. 1857, another paper was issued upon said judgment, signed by J. C. Ford, plaintiff's attorney, purporting to be an execution, the style whereof was as follows:

" The people of the State of Wisconsin, to the sheriff of the county of Dane, greeting:" and that this last paper was returned on the 27th day of March, 1857, with the following return indorsed thereon :

DANE COUNTY, ss : (By order of J. C. Ford, plaintiff's attorney,) I return this execution not satisfied, as there is no (personal) property to be found belonging to the defendant, in my county, whereon to levy. Madison, March 27, 1857.

Signed, JOHN D. WELCH, Sheriff Dane Co.
By F. MOHR. Deputy."

With the further indorsement on this execution, as follows :

" The above return amended according to the facts. Madison, May 11, 1857.

F. MOHR, Deputy Sheriff."

And that the words in the last mentioned return enclosed in brackets are the amendments to the same.

And the petitioner represented that no other or different executions have issued upon said judgment, except the ones above mentioned.

The sheriff, in his return to the writ of *habeas corpus*, gives a copy of the warrant of commitment by virtue of which he held the petitioner, Remington, in custody, which is as follows:

" THE STATE OF WISCONSIN—*To the Sheriff of the County of Dane, Greeting :*

It duly appearing to me, by the affidavits of J. C. Ford and H. D. B. Cutler, the attorneys for the plaintiff, in the case of

Michael Harman, plaintiff, and Henry W. Remington and Benjamin F. Perry, defendants, in proceedings supplementary to the execution of said cause, that the said Henry W. Remington has not complied with an order duly made by me on the 20th of April, A. D. 1857, for the assignment and delivery to the receiver, appointed by me, of the following property, to wit: One gold watch and chain, the certificates of two hundred acres of school land in Vermont, Dane county, and the rents of houses on lots number twelve and thirteen, in block fifty-one, of the city of Madison, for the month of May, 1857, and to be applied towards the satisfaction of the judgment in said cause, in the circuit court of the county of Dane aforesaid; and also, that the said Remington was duly ordered to pay the costs in said supplementary proceedings, taxed by me at 39 29-100 dollars, which he has refused to pay; and also, that the said Remington was duly notified to show cause before me, on the 8th day of May, A. D. 1857, why an attachment should not be issued against him, and he be punished for his alleged misconduct in disobeying my said orders, and not having shown good cause therefor; and that the said Remington has not complied with my said orders, and the said Remington having been attached and brought before me, and after examination of him, and the existence of the facts hereinbefore stated, being made apparent, and not showing good cause or having made any defence of the same; and whereas I have adjudged the said Remington in contempt for not obeying said orders, and ordered him to be closely imprisoned in the Dane county jail till he should pay the said judgment and costs in said cause, in the circuit court of Dane county, and the sum of thirty-four dollars and twenty-nine cents, being costs and expenses incident to the proceedings supplementary herein, and the costs and expenses incident to the attachment herein issued by me, and the commitment of the said Remington under this warrant, and the said Reming-

ton not having done any of the acts so ordered by me, under the Code of Procedure, to prevent the issuing of the warrant of commitment therein provided; You are therefore commanded in the name of the State of Wisconsin, to commit the said Henry W. Remington to the jail of the county of Dane, and there to be closely imprisoned, till he shall deliver and assign the said property hereinbefore described, and by me duly ordered to be delivered as aforesaid, or until he shall pay the said judgment and costs, and costs supplementary thereto, and to be detained by the keeper of said jail, who is hereby required to receive and commit the said Remington until he shall comply with said orders, or be thence discharged under § 213 of ch. 2, of the Code of Procedure, of the State of Wisconsin, and for so doing, this shall be your sufficient warrant.

Given under my hand, at the city of Madison, this 9th day of May, A. D. 1857.

R. W. LANSING,
*Court Commissioner for Dane County."*

The petitioner files a sworn answer to this return, making substantially the same allegations in reference to the issuing and returns of the writs of execution as those contained in his petition. And upon the hearing, the judgment roll in the case of *Harman vs. Remington and Perry,* in the circuit court, was introduced, from which it appeared that the executions had issued as stated in the petition, and that the returns thereon were correctly set forth. It also appeared from said judgment roll, that after judgment in the circuit court, the cause was removed by the defendants, by writ of error to the supreme court, and that a *supersedeas* issued from that court, and further, that the case was subsequently, under rule eight of the supreme court, dismissed.

The above statement of facts, is all, I think, that it is necessary to make, in order to understand fully the questions involved in the case. For the sake of convenience I will dis-

pose of such questions as I deem material and proper to be noticed in considering:

1. What facts must exist to authorize the proceeding to obtain a discovery of the property of the judgment debtor under ch. 2, title 9, of the Code, and

2. Whether a court commissioner is authorized to entertain this proceeding; make orders for the payment of money in satisfaction of the judgment, and for the appointment of a receiver of the property, and in the event the debtor refuses or neglects to obey such orders, the power of the commissioner to proceed and attach the debtor and imprison him for a contempt in disobeying such orders, as was done in this case.

The provision of the Code, which has the most direct bearing upon the first point of inquiry, is the first clause of § 202, and reads as follows:

"When an execution against property of the judgment debtor or any one of several debtors in the same judgment, issued to the sheriff of the county where he resides, or if he do not reside in the State, to the sheriff of a county where a judgment roll or transcript of a justice's judgment for ten dollars or upwards, exclusive of costs, is filed, is returned unsatisfied, in whole or in part, the judgment creditor, at any time after such return is made, is entitled to an order from the judge of the court, or a county judge, or a court commissioner of the county to which the execution was issued, requiring such judgment debtor to appear and answer concerning his property, *before such judge,* at a time and place specified in the order within the county to which the execution was issued."

It is very evident from an examination of the code—and i was so conceded on the argument of this case—that the remedy given by this provision, and other sections following in the same chapter, was intended as a substitute for a creditor's bill in chancery, under the old practice. A creditor's bill cou

be filed when a judgment creditor had exhausted his remedy at common law, and the execution was returned unsatisfied in whole or in part. The complainant had to allege in his bill, however, that an execution had been returned unsatisfied, and and that the defendant had property or things in action, which could not be reached by an execution to lay foundation for equity jurisdiction, and before that court would interfere. See the cases cited in argument and by the court in *Hadden vs. Sprader*, 20 J. R. 553; 7 Paige, 123. And the legislature, in adopting the code, which abolishes all distinction between legal and equitable remedies, undoubtedly supposed they were retaining the beneficial remedy by creditor's bill, in the above and following sections. And the legislature consequently provided that when an execution had been issued against the property of the judgment debtor and returned unsatisfied, for the want of real or personal property upon which a levy could be made, that the creditor might apply to a circuit judge, county judge or court commissioner for an order, requiring the judgment debtor to appear before the circuit judge, if in the county, and if not, before the county judge, (as I construe the language of this provision,) and make disclosure concerning his property. As in the creditor's bill, an appeal was made to the conscience of the defendant to discover upon oath whether he had property covered up or concealed beyond the reach of an execution, so in this proceeding, the judgment debtor is required to state, under oath, whether he has not property somewhere concealed, which should be applied in payment of his debts.

But obviously, the statute pre-supposes that the creditor would first exhaust his remedy under the execution, and ascertain if his judgment could not be satisfied by the ordinary means or process of the court, before the debtor could be called upon to make discovery of his property. So long as the judgment debtor had tracable, tangible property and effects

real or personal, not exempt from sale under an execution, the judgment creditor needs not the remedy given by this proceeding, and it was not intended he should avail himself of it. This is an exceedingly prompt, summary proceeding, and while I would give the statute which secures it a fair, liberal construction, equal and adequate to the accomplishment of the end proposed, yet I do not think it should be construed so as to embrace cases never intended by the legislature to be reached by it. I therefore think, that it is absolutely essential, in order to give a circuit or county judge jurisdiction of this proceeding, that the judgment creditor should have, in good faith, issued his execution, and that the same should be returned unsatisfied by the officer who should make all reasonable and diligent search for real or personal property not exempt from sale, upon which to levy. If, under such circumstances, and by these means, the execution cannot be fully satisfied, the remedy provided by the code may be resorted to. Now, how stands this case? The returns upon all the executions fail to show that the creditor had exhausted his remedy under them. The return upon the first writ is, that the officer could find no goods and chattels upon which to levy—a return which may be strictly true, and yet the judgment debtor have thousands of dollars worth of real estate subject to a sale under an execution. Upon the alias writ, the officer returns that he has made a levy upon certain personal property, stating what it is.

For the purposes of this case, let it be conceded that the position of the counsel for the respondent is correct, that the levy under the alias writ was discharged by the suing out of the writ of error and *supersedeas* from the supreme court— but still the return upon the *pluries* writ of execution was insufficient to show that the creditor had exhausted his remedy. The return upon this latter writ, sets forth that the execution was returned by the order of the plaintiff's attorney unsatis-

fied, no personal property found belonging to the defendant. But the exigency of the writ required the officer to satisfy the same out of the personal or real property of the defendant. And the irresistable inference drawn from all these returns is, that the defendant had real property upon which a levy could be made. It is said that the officer amended his return after the institution of the proceedings supplemental to the execution. But it is in no manner claimed that the amendment was not in strict conformity to the facts, and if so, it was eminently proper, in my judgment, that the amendment should be made. For it would be trifling with judicial proceedings, and be an abuse of the remedy given by the code, to call upon a defendant to disclose as to property when he had ample tangible assets to satisfy the execution. As already remarked, according to my understanding of the code, it was necessary, in order to give any judge jurisdiction of this proceeding, that a *bona fide* effort had been made, both on the part of the creditor and the officer, to make the money on the execution upon the real and personal estate of the debtor, and this effort had proved fruitless.

It was insisted by the counsel for the respondent, that this proceeding was authorized as soon as an execution was returned "unsatisfied," regardless of the question as to whether that return was correct or not. I cannot think so, especially when that return is thus made at the instance and under the direction of the creditor or his attorney; and there is a defect in the material point of its not applying to real as well as personal property. So that the conclusion to which I have arrived upon this branch of the case is, that it being indispensably necessary to give the judge jurisdiction of this proceeding, that an execution should have been issued and returned unsatisfied, and that such return should be true as applicable to real and personal estate; and it not appearing that these facts exist in this case, but the contrary; this proceeding

In re Remington.

would have been irregular before whomsoever it had been instituted.

I now pass on to the other question for consideration, has a court commissioner any authority to entertain this proceeding for a discovery of property by the judgment debtor, and to punish as for contempt a disobedience of one of his orders? And I am very clearly of the opinion that he has neither power to do the one thing or the other.

I have already alluded to my construction of this provision of the code, and it is this: That when an execution is returned unsatisfied in whole or in part, which has been issued to the sheriff of the county in which the judgment debtor resides, if the debtor is a resident of the state, the judgment creditor at any time after such return is made, is entitled to an order from the judge of the court, or a county judge or court commissioner, requiring the debtor to appear and answer concerning his property before such judge, at a time and place specified in the order, within the county to which the execution issued. It will be observed that the statute requires that the debtor shall be held to answer before a judge within the county to which the execution issued; that is, within the county where the debtor resides. And a question was made upon the argument as to whether a county judge could entertain this proceeding, and it was insisted that he could not unless a court commissioner could; that the same course of reasoning which would show that the county judge had authority over it, would likewise establish the power of a court commissioner. But I do not think so. The language, "such judge" may, without any violence or forced construction, be held to refer either to the judge of the court or county judge, mentioned in the antecedent part of the section. And when it is borne in mind that there are several counties in a circuit, and that the examination for a discovery must be in the county where the debtor resides, and that consequently a circuit

judge could not, without great inconvenience, and perhaps neglect of business in court, travel around his circuit to attend these examinations, to give this remedy any efficiency whatever; and to support and give effect to the whole provision, the examination must frequently be before a county judge; and I have no doubt that the legislature thus intended. But all the court commissioner is authorized to do, is to grant the preliminary order for the examination before the judge. Here his power over the proceeding ends. But it is claimed by the counsel for the respondent, that a court commissioner has full jurisdiction over the proceeding, when it is instituted, and can proceed to punish as for contempt any disobedience of an order which he may properly make in the cause; and the ground of argument leading to this conclusion is as follows: That by § 23, Art. 7, constitution of Wisconsin, the legislature is authorized to provide for the appointment of one or more persons in each organized county, and to vest in such persons such judicial powers as it may, by law, prescribe, provided such power shall not exceed that of a judge of a circuit court at chambers, that the legislature has under this section, provided for the appointment of court commissioners and authorized them to exercise the power of a judge of the circuit court at chambers: (§ 5, chap. 131, and § 75, chap. 10, R. S., and § 1, chap. 53, S. L. 1850,) and that, as by the code, the circuit judge at chambers can entertain this proceeding, and by § 213, punish, as for contempt, any person or party who disobeys his order, therefore the court commissioner has full authority over the proceeding also, and can likewise punish, as for a contempt, a disobedience of one of his orders. A slight examination will show that this argument is more specious than solid. And it is well to notice here, the subtle and winding course of the argument, from the premise to the conclusion. *First*, by implication and construction, is it shown that the commissioner has authority over the proceed-

In re Remington.

ing, then, by another implication, that he has power to make such orders as were made in the present case, and finally, and what is more extraordinary than all, by a further implication, that he has power to punish by imprisonment as for contempt, a disobedience of his order. Here then, we arrive at the power of the commissioner to punish, as for contempt, a disobedience of an order made by him, only upon a doubtful and obscure construction of the different laws of the State ; a power, I venture to say, never exercised by any circuit judge in this state, at chambers, and a power which no circuit judge could properly exercise at chambers, unless it was clearly conferred upon him by law.

It is evident, I think, from § 213 of the code, that the legislature did intend to give to a circuit judge in vacation, the power to punish, as for contempt, a disobedience of an order lawfully made by him, in a proceeding supplementary to the execution. I shall not now stop to inquire whether a circuit judge can, under the constitutional provision of this state, which declares that " no person shall be imprisoned for debt arising out of, or founded on a contract express or implied," make an order or enter a judgment, in what was once known as actions *ex contractu*, that a debtor pay money, and upon his disobedience to pay according to the order, treat the debtor as in contempt, and proceed to punish him by fine or imprisonment, or both ; but I will remark, incidentally, that I cannot now perceive how it is more easy to violate or evade the above constitutional inhibition by an indirect than by a direct proceeding. Still, perhaps it may be competent for him to do so, without violating the constitution.

The case of Gaylord Blair, in 4 Wis. R., 522, has a remote bearing upon this point, though not a direct adjudication upon it. Still, it will be time enough to consider and determine the question as to how far the circuit judge can go in punishing, as for contempt, a disobedience of an order to pay mon-

ey, when that question shall arise under the code. I therefore dismiss that question without further discussion or comment.

But to return, the proposition cannot be maintained that under the laws of this State a court commissioner can do all the acts and exercise all the powers of a circuit judge at chambers. The proposition is too broad and requires limitation, as was admitted upon the argument by the counsel for the respondent; for confessedly there are some official acts which a judge may perform at chambers, and which a court commissioner has no authority to perform. I shall not mention them, as they will readily occur to one familiar with the statutes. So this rule does not furnish a safe criterion. As a general thing, subject of course to some exceptions, a court commissioner can perform the ordinary duties of a circuit judge at chambers. But suppose the Legislature sees fit to devolve upon the circuit judges in vacation, new duties and unusual powers, does it follow that thereby those duties and those powers can be exercised and discharged by court commissioners? For illustration, suppose the Legislature had required the circuit judges to meet in vacation and codify the statutes, or make rules of practice for their respective circuits, or had given them the power of hearing and determining at chambers all contested claims to the right of pre-emption upon the School and University Lands in their circuits, would any one thereupon seriously contend that court commissioners could codify the laws, frame rules of practice, or hear pre-emption claims? I presume not. And yet the assumption of power in the present case, appears to my mind as great and unwarranted, as it would be for a commissioner to insist upon his right to act in the cases supposed. The powers and duties of a circuit judge, or county judge, under this and the subsequent provisions of the code, in the chapter under examination, are new, peculiar and unusual. In no proper sense of

the word, can they be said to be such duties and powers as are ordinarily exercised by a circuit judge at chambers, and unless the legislature had expressly conferred upon such judges, the power to perform these various acts, they would have no power to perform them. Deriving their power over the subject matter entirely from the code, they can only take jurisdiction of a case when it is given them by the code, and act upon it as therein prescribed. What reason is there for contending that a court commissioner has authority over these proceedings? It is not given him by this section. The language of the code is, that the debtor shall appear and answer before such judge. What judge? Obviously those before mentioned in the section.

The court commissioner is designated as one of the officers who may grant the preliminary order, not by the name of "judge," however. I have no doubt but he was studiously and purposely excluded, by the legislature from the exercise of any further power over the proceeding. It was insisted that the context shows that it was the intention of the legislature to confer this power upon court commissioners. But how shall we determine that this was the intention of the legislature? Certainly it is not so expressed in the law. I suppose if the legislature had intended to confer this power upon court commissioners, it would have said so in clear and explicit terms. But such is not the case. Certain officers are named who shall have jurisdiction of the proceeding, but court commissioners are not among them. Can there be a clearer case for the application of the rule, *expressio unius, exclusio alterius.*

I therefore consider it to be contrary to all known rules of construction to hold that a commissioner is authorized, under the code, to take jurisdiction of this proceeding, and enter up orders for the payment of money, the appointment of a receiver, and to punish as for a contempt, a person who has

disobeyed those orders, as has been done in this case. If I thought it were necessary, I could add many additional reasons why I consider the construction of these provisions of the code, as given by the counsel for the respondent, as unsound, and one that ought not to be adopted.

My attention was called to other provisions under the code, where court commissioners are expressly designated as persons authorized to perform various acts, for the purpose of showing that when the legislature intended to confer a power upon them, it was done so in clear and explicit terms. But the language in the first clause of § 202 is so clear, so free from ambiguity and doubt, that I do not deem it necessary to enlarge upon this branch of the case. It may perhaps be proper to remark that the second clause of § 202, is not so clearly expressed and at first, I was in doubt as to what construction should be given to it. I am of opinion that when steps are taken to secure a discovery of property by the judgment debtor, before the return of the execution, that a court commissioner, under that clause, can take the affidavit, and perhaps grant an order for the debtor to appear and answer before a judge of the county, as provided upon the return of the execution. My reason for this construction of the clause is, that to give the statute full effect, the commissioner should have the power to grant the preliminary orders for a discovery or there would be no propriety in enabling him to take the affidavit. But, however this may be upon the first clause of this section, and the clause under which the proceeding in the present case was instituted, there does not seem to be any room for doubt. The intention of the legislature is expressed in clear and apt words and must prevail.

I have only incidentaly alluded to the power of the commissioner to make orders for the appointment of receivers, and the payment of money, or delivery of property, to satisfy an execution.

If I am correct in this view of the provisions of the code, that the commissioner has no jurisdiction over the proceeding supplemental to an execution, as a matter of course he would have no authority to make such orders, and if he has no authority to make these orders, there can be no contempt committed in disobeying them. It is not necessary for me to go over the reasons for holding that he cannot make such orders. They are the same as those already assigned upon the point of jurisdiction, and may be briefly summed up in the rule that "if a new power be given by an affirmative statute to a certain person, by the designation of that power, all other persons are in general excluded from the exercise of that power." (Dwarris on statutes, 641.) The legislature has given the court or the judge the power of making these orders.

But, if I am wrong in all that I have stated, if the commissioner has the power to entertain the proceeding and make these orders, I still hold, that under the laws of this State, he has no power to punish as for a contempt a person who disobeys his orders, and that, therefore, the commitment of the petitioner was illegal, and he must be discharged. I do not intend to give much prominence to this question or to argue it, for I should hope that it deserved little argument. That a court commissioner—a mere appointee of the circuit court—can attach a citizen and imprison him summarily, at his own pleasure, for a contempt, without any reference even to chapter 115 Rev. Stat., is certainly a most extraordinary position. Now, I deny *in toto* the power of a court commissioner to punish for contempt, even in a matter where he has full and ample jurisdiction. If he has this power, where is the statute that confers it upon him? I have been referred to none, and I know of none. I have no doubt but the commissioner in this case acted from the best of motives; I cannot believe that he intended to act oppressively; but he certainly very widely misjudged as to the extent of his power, when he at-

tempted to punish, by imprisonment in the county jail, a citizen for disobeying one of his orders. I shall dismiss the whole matter here, without further suggestions; it will be time enough to examine the question, when some law is cited that gives him, or professes to give him, that high authority; for that, by involved implication, it can be made to appear that a court commissioner can exercise this high discretionary power of punishing as for a contempt by imprisonment, a citizen who disobeys his orders—a power usually jealously guarded and hedged in by strong legal enactments, which the wisdom and experience of centuries in this country and England have proven necessary to prevent abuse, and secure the liberties of citizens, when it is exercised by the highest judicial tribunals—that a court commissioner can rightly exercise this power, without it is conferred upon him by law, I do not believe. I cannot admit it until   see an act conferring it upon him in the clearest and most unequivocal manner.

The order of Mr. Justice Cole, discharging the petitioner, must be affirmed.