THE SECOND WARD BANK VS. DIEDRICH UPMANN, im- THE SECOND
WARD BANK
pleaded with HENRY UPMANN.                    v.
UPMANN.

A county court having civil jurisdiction, possesses the power to appoint a re-
ceiver, in a proper case, upon supplementary proceedings against a debtor,
against whom a judgment has been rendered in such court.

Such a court has jurisdiction of all those equitable remedies which were formerly
used merely in aid of a suit or judgment at law, and which, or substitutes
for which, the Code has made a part of the remedy in every civil action.

Where a sheriff returned an execution "no property," after holding it forty
days, but before its regular return day, and there appeared upon the execu-
tion, beneath such return, and of the same date, a direction from the plain-
tiff's counsel to the sheriff, in these words, "Return as above, after diligent
search:" *Held*, that the return was a sufficient foundation for supplementary
proceedings, there being nothing in such return to indicate a want of good
faith in the effort to reach the debtor's property upon the execution.

Case of *Remington*, 7 Wis., 643, distinguished.

Where it appears upon supplementary proceedings, that the judgment debtor has
property liable to execution sufficient to satisfy the judgment, the court has
no authority to appoint a receiver.

A conveyed to B certain real estate, by an absolute deed, and B at the same time
executed to A a bond, reciting that said real estate was conveyed as security
for a loan of money, and binding himself to re-convey it upon the payment
of the debt when it fell due; the deed and bond were recorded the day after
their date, and the debt, though past due, remained unpaid: *Held*, that the
bond was a good defeasance in law; that the two instruments constituted, in
law, a mortgage of the property, and that A had an estate in such property,
which was subject to sale on execution against him.

APPEAL from the County Court of *Milwaukee* County.
On the 7th of January, 1859, the defendants *Diedrich* and
*Henry Upmann*, confessed judgment in the county court of
Milwaukee county, in favor of the *Second Ward Bank*, for
the sum of $2,104. Execution was issued upon the judgment,
January 29, 1859, and returned March 17, 1859, with the
following indorsements: "Received Feb'y 1st, 1859, at 9 A.
M. Filed March 17th, 1859." "Milwaukee county, ss. I
certify that I could not find any property in my county,
whereof to make the amount of this execution, or any part of
it, belonging to the within named defendants, and return un-
satisfied. March 16, 1859. A. J. LANGWORTHY, Sheriff, Mil.
Co., Wis."—"Return after diligent search as above. March
16th, 1859. SMITH & SALOMON, Pl'ff's Attys." On the 23d

of May, 1859, the plaintiff presented to the judge of said court an affidavit, which, after setting forth the entry and docketing of said judgment, and the issuing of execution thereon as aforesaid, alleged that the defendants were non-residents of this state, and that the sheriff had "returned the execution wholly unsatisfied," and that the judgment roll in the action was filed, &c. The county judge, on the same day, made an order, based upon this affidavit, directing the defendant *Diedrich* to appear before him on the next day, "to make discovery on oath concerning his property, &c." The defendant did not appear on that day, but, by virtue of a subsequent order made by said judge, was examined before a referee on the 29th of September, 1859, when he stated that he had held lot 11, block 10, in the 7th ward of the city of Milwaukee (on which was the Hotel Wettstein), in trust for his wife until her death, intestate, in June, 1858, and afterwards for her "favorite son," who was a minor; that his wife had bought the property in 1847, with her own money, without his knowledge or request, and while he was in Mexico; that his name was inserted as grantee in the deed, at her instance, without his knowledge; that there was no trust expressed in the deed, and that the buildings thereon had cost about $20,000. The plaintiff's counsel offered in evidence certified copies of the following instruments: 1. A bond of Matthias Wegmann and wife, for the conveyance of said lot to *Diedrich Upmann*, dated May 10th, 1847. 2. A deed of said lot from said Matthias Wegmann and wife to *Diedrich Upmann*, not expressing any trust, dated April 20, 1849. 3. A warranty deed of same lot from *Diedrich Upmann* to one Tiffany, consideration $3,000, dated November 17th, 1857, and recorded the next day. 4. A bond from said Tiffany to *Diedrich Upmann*, bearing even date with the deed, and recorded also on the next day. This bond recited the execution on that day, of said deed from *Diedrich Upmann* to Tiffany, as collateral security for a loan of $3,000, to be paid at such time as said *Upmann* should elect, after six months and before one year from that date, with interest according to the tenor of a note for that sum, given by said *Upmann* to said Tiffany, and bound Tiffany in a penalty of

$50,000 to re-convey the lot to said *Upmann*, upon payment of said note according to its tenor, or upon demand thereafter.

Upon this and other evidence, not necessary to be here referred to, the judge of the county court, upon application at chambers, made an order appointing a receiver of the property of said *Diedrich*, by which, among other things, it was directed that all the title which said *Diedrich* had then, or had at the time of the service of the order to answer, in said lot No. 11, should be vested in said receiver, upon the execution by him of the bond, &c., in said order required, and that said receiver, after giving certain public notice, as directed by said order, should sell the right and title of said *Diedrich* in said lot at public auction, &c. From this order *Diedrich Upmann* appealed to the county court, at its regular term, where the order was affirmed, and from the order of affirmance appealed to this court.

*Schurtz & Paine*, for appellants, contended that the supplementary proceedings were of an equitable nature (7 Wis., 643; 2 Duer, 658; 4 Sandf., 718; 11 How. Pr., 528), and that the county court had no jurisdiction of them; that that court had not general equity jurisdiction before the enactment of the Code of 1857, and that the Code did not give it such jurisdiction; that if the Code left that question doubtful, Rev. Stat., p. 652, § 46, removed all doubt. It cannot be maintained that that section excludes jurisdiction of regular chancery suits only, and not of special equity proceedings. The law makes no such distinction. Besides, if any chancery suit would have been regular in this case, it was the old creditor's bill. An order for the examination of a judgment debtor is a substitute for a creditor's bill, and is, in its nature, a new suit. 2 Duer, 658. 2. The appellant's interest in the land in question might have been sold on execution. The bond and deed were executed simultaneously, and recorded, and constitute a *mortgage at law*. 2 Hilliard on Mort., 243; 1 id., 27, 376; 6 Blackf., 113; 8 id., 99; 3 id., 52; 6 Pick., 172; 1 Eng., 269; 8 id., 112; 7 Johns., 278; 4 id., 41; 6 id., 290; 3 Conn., 211; 2 Ohio, 224; 10 Iredell, 269; 1 id., 340; 4 id., 12; 3 Sumner, 474; 4 McC., 336; 3

Day, 397; 1 id., 93; 9 N. H., 20; 3 Ham., 526; 8 Dana, 194; 11 Vt., 323; 21 id., 449; 7 Watts & S., 335; 1 Rob. (Va.), 148; 17 Serg. and R., 70; 7 Watts, 269, 404; 3 id., 188; 6 id., 405; 2 Mass., 495; 5 id., 116; 4 id., 569; 12 id., 463; 2 Cow., 324; 4 Kent, 141; 2 Johns. Ch., 191; 14 Wend., 63; 2 Met., 103; 6 id., 479; 13 Pick., 413; 15 id., 259; 18 id., 543; 8 Paige, 243; 2 Greenl. Cruise, 81 n.; 1 Vern., 7; 1 H. Bl., 119; 1 Clark, 166; Forr., 63; 10 Shepl., 234; 13 Ala., 246; 21 id., 92. This was the ancient form of mortgage. (1 H. Bl., 119; 1 Hill. on Mort., 18; 2 Ves., 219), and many modern conveyancers have adopted it. 1 Pow. Mort., 9, n. H.; 3 Md., 82; 1 Hill. on Mort., 18. If the deed is registered and the bond to reconvey not registered, the transaction constitutes not a legal but an equitable mortgage. 1 Hill. Mort., 35, and cases cited. R. S., 1858, p. 542, § 32; 7 Watts, 268. The usual form of a defeasance is that the deed shall be void on payment of the debt; but a provision that on payment the grantee shall reconvey, is equally effectual, especially if the condition recites that the conveyance is made as a security for money. 2 Mass., 497; 5 id., 116; 12 id., 463; 6 Blackf., 113; 7 Humph., 121, 431; 2 Yerg., 325; 1 Hill. Mort., 31; 2 John. Ch. R., 191; 2 Met., 103; 6 id., 479; 15 Pick., 261; 13 id., 413. In this state the legal title vests in the mortgagor until foreclosure. 7 Wis., 566. In those states where the fee is held to be in the mortgagee, whether before or after forfeiture, the mortgagor's interest can be sold on execution at law. 1 Day, 93; 3 id., 397; 3 Conn., 211; 5 id., 592; 1 N. H., 172; 1 South., 268; 15 Ohio, 735; 11 B. Mon., 21; 3 Cush., 296. In 6 Blackf., 113, it was held that a party who had executed a deed, and received a bond for the reconveyance of the land upon the payment of a debt, had an interest in the land which was subject to sale on execution. 3. No trust in favor of *Upmann's* wife or child could be interposed to defeat the plaintiff's execution, for the deed to *Upmann* shows no trust. 4. There was no such return by the sheriff as would entitle the plaintiff to institute supplementary proceedings. *In re Remington*, 7 Wis., 643. 5. A sale under the order of the county court would cut off all redemption. This was

a violation of the spirit, if not of the letter of our law, which favors redemption on judicial sales of land generally.

*Smith & Salomon*, for respondent:

1. The design of the proviso in sec. 45, chap. 117, R. S., 1858, was to prohibit the courts mentioned in that section, from entertaining original jurisdiction of chancery cases. It could not mean to prohibit those courts from entertaining such proceedings as are prescribed by statute in a case otherwise within their jurisdiction, although such proceedings were formerly had only in courts of equity. 2. The sheriff's return was sufficient. The most that can be made of the memorandum of the plaintiff's attorney, is a request that he would return the execution, after he had made diligent search, before the return day. Crocker on Sheriffs, §§ 422, 424; 5 How. Pr. R., 396. But even if the appellant had property subject to execution, he could not be heard in this action, to contradict the sheriff's return of *nulla bona*, but would have to resort to his action for a false return. Crocker on Shffs., § 44; 3 Wend., 202; 6 Wis., 232, 243; 2 Paige, 418. Nor can he raise an objection to the return on this appeal. If he thought the return wilfully false, he should have applied to the court below to set it aside, or sued for a false return. 20 Wend., 622; R. S., 1858, chap. 134, § 88. 3. The appellant's interest in the lot deeded to Tiffany was not subject to sale on execution. The legal title was in Tiffany. A court of equity would indeed consider the deed and bond together as a mortgage, and upon repayment of the money loaned, with interest, would compel Tiffany to reconvey the land. But the appellant's only remedy in a court of law would have been by a suit for the penalty, if he had paid the money within the time limited, and Tiffany had refused to reconvey (*Orton vs. Knab*, 3 Wis., 576); and even this legal remedy had been lost by the lapse of the time within which payment was to be made. The appellant had, therefore, nothing left but a *strict equity of redemption*, and such a mere equitable right is not subject to sale on execution. *Jackson vs. Parker*, 9 Cow., 78, 80, *et seq.; Bogart vs. Perry*, 1 John. Ch. R., 52. In the latter case, the equitable interest was coupled with possession, and the court held that

June Term,
1860.

The Second
Ward Bank
v.
Upmann.

it could not be sold on execution. That our statute means to subject to sale on execution only legal estates, appears from sec. 70, chap. 134, R. S., 1858, which provides that the grantee in a sheriff's deed shall be deemed vested with the legal estate from the time of sale, for the purpose of maintaining an action for an injury to such real estate. This would be impossible if the grantee had only acquired a title to an equitable interest. 4. The appellant, when examined under the supplementary proceedings, disclaimed any interest in the land, and claimed to hold it in trust. This shows the propriety of these proceedings to reach the property. *Sale vs. Lawson*, 4 Sandf., 718; *Todd vs Crooke*, id., 694; *Lilienthal vs. Fellerman*, 11 How. Pr. R., 528; *Bloodgood vs. Clark*, 4 Paige, 574. And the appellant, having set up such a claim in his answer, which is to be considered in the light of an answer to a creditor's bill, (*In re Remington*, 7 Wis., 643; *Corning vs. Tucker*, 5 How. Pr. R., 16, 20), is estopped from now claiming that his interest should have been sold on execution.

October 15.

*By the Court*, PAINE, J.    In this case a judgment was recovered in the county court of Milwaukee county, and an execution having been issued and returned *nulla bona*, supplemental proceedings were instituted before the judge of that court. The first question raised is, whether he had jurisdiction of those proceedings. Before the Code that court had no equitable jurisdiction. The Code did not profess to change the jurisdiction of courts, or to confer general equity jurisdiction on the county courts. And a subsequent law, sec. 46, chap. 117, R. S., 1858, provided that the county courts therein referred to, having civil jurisdiction, should not be held to have jurisdiction in cases which had theretofore been cognizable only in a court of equity, except so far as to enable them to hear and determine any equitable defense, &c. It is claimed that the proceedings supplemental to execution under the Code, are in substance the creditor's bill of the old equity system, and that therefore the provisions before referred to exclude the jurisdiction of the county judge. This conclusion might seem correct at first view, but

June Term, 1860.

THE SECOND WARD BANK v. UPMANN.

we think that upon careful examination it will appear incorrect. The argument by which it is arrived at, overlooks a distinction, which seems to us quite obvious, between such equitable remedies as might be regarded as entirely of an ancillary character, and were merely in aid of a suit at law, and those suits which were wholly of an equitable character. It must be conceded that in the latter class of suits, the county courts mentioned in the section above referred to, would not have jurisdiction, except as a defense to a legal action. That statute not only expressly excludes it, but there was nothing in the adoption of the Code from which an intention could clearly be derived to confer such jurisdiction. But the same argument does not hold good with respect to those equitable remedies which were merely in aid of a suit or judgment at law, and which, or substitutes for which, the Code has expressly adopted as a part of the remedy in every civil action. The result of such an enactment is, that the legal remedy is enlarged and completed. Those defects are supplied, which under the old system made it necessary to resort to equity to aid the proceeding at law. The necessity for any separate suit is abolished, and all the powers necessary for the complete adjudication of the rights of the parties and the execution of the judgment, are provided for in that series of proceedings which, under the Code, constitutes the remedy in a civil action. While we concede, therefore, that the Code did not confer on those county courts jurisdiction in independent equitable suits, yet we do think that it necessarily had the effect to confer upon them power to administer the entire remedy in those civil suits of which they have jurisdiction, though some parts of that remedy obtain the same objects formerly obtained by a resort to equitable aid.

This may be illustrated by reference to the power of compelling a discovery. Under the old practice this was obtained by a resort to equitable aid, but the Code abolished bills for a discovery, and, in their stead, allowed every party to a civil action to be examined by the adverse party. Now can it be supposed that in a civil action of which the county court of Milwaukee has jurisdiction, it could not compel such an examination, merely because it once had to be obtained by a bill

June Term,
1860.

THE SECOND
WARD BANK
v.
UPMANN.

in equity? On the contrary, it seems clear to us that it would have the power. So of the power to make an injunctional order in certain cases. The statute in respect to these powers has accomplished what grew up as a mere matter of practice in respect to new trials in actions at law. At one time it was necessary to resort to a court of equity to obtain a new trial. But the courts of law began to assume the power of granting new trials, and to exercise it with more and more liberality, until finally it became so fully established that a resort to equity was almost entirely superseded. Suppose this had not been done, but the practice had still remained to resort to a bill in equity to obtain a new trial. . If then, the Code had provided that whenever a trial had been had, the party might apply to the court on motion for a new trial, could it be said that this could not be done in the county court? We think not, and that it is equally clear that the Code confers on those courts all the powers which it prescribes as a part of the remedy in a civil action. Such a result is entirely in harmony with its general scope and object, which was to establish a single, uniform system of practice, by which all courts might administer complete relief in such suits as they had jurisdiction of. That it was competent for the legislature to confer these powers on those courts there is no doubt. It is only a question of intent, and of this there would seem to be no room for doubt, except for the provision above referred to, in sec. 46, chap. 117, R. S. The statute which authorizes supplementary proceedings, says that the party shall be entitled to the order from the "*judge of the court*, or a county judge or a court commissioner," &c. The "judge of the court" clearly indicates the judge of the court where the judgment was rendered. And construing all the provisions of the statute upon the subject together, we think the proviso in section 46, chap. 117, was designed only to prevent those courts from having jurisdiction in independent equitable suits, and not to prevent them from exercising those powers which by the Code were made parts of the remedy in an action at law. It follows, therefore, that the judge of the county court had jurisdiction of these proceedings.

We think, also, that the affidavit on which the order for the examination of the judgment debtor was made, as well as the execution itself, showed a sufficient return to lay the foundation for supplementary proceedings. The return certifies that the officer "could find no property whereof to make the amount," &c. This includes both real and personal property, and is therefore not liable to the same objection as the return in the case of *Remington*, 7 Wis., 646, which included only personal property, leaving the implication that the defendant might have real property on which to levy. True, it was returned by direction of the plaintiff's attorneys. But this direction was not given until after the sheriff had held the execution more than forty days, and then they directed him to return it only after diligent search, and these proceedings were not commenced until after he would have been bound to return it by law. There is nothing in this, indicating a want of that good faith in attempting to reach the debtor's property by the ordinary legal process, which is required as a condition precedent to the party's right to institute supplementary proceedings. True, it turns out that the judgment debtor had an interest in certain real estate, but the counsel claimed, evidently in good faith, that this interest could not be reached by execution; and whether it could or not, was the principal question discussed here. The facts material to that question are these : *Upmann* was the owner of the property, and conveyed it as security for a loan of $3,000, to George A. Tiffany. The conveyance was by an absolute warranty deed, but Tiffany executed at the same time to *Upmann* a bond in the penal sum of $50,000—reciting that the land had been conveyed as security for the loan, and conditioned to reconvey on the payment of the amount loaned, with interest, &c. The counsel for the plaintiff conceded that this, in equity, would be a mere mortgage, but claimed that it would be so only in equity, and that it not being a legal mortgage, the interest of *Upmann* could not be sold on execution. But we have no doubt that these instruments, executed by the parties, should be considered a mortgage both at law and in equity. No doctrine is more familiar, than that several instruments, executed together, as

parts of one transaction, are to be considered together in determining what was the agreement. And it has accordingly been held in a great number of cases, which are extensively cited by the appellant's counsel, that an absolute deed given and a defeasance taken back in a separate instrument, are just as much a mortgage as though the defeasance were in the deed itself. And the objection made here that the bond to reconvey is not technically a defeasance, inasmuch as it does not provide that on payment the deed should be void, has also been passed on, and it has been held that such a bond is a good and proper defeasance in law. *Erskine vs. Townsend,* 2 Mass., 497; *Watkins vs. Gregory,* 6 Blackf., 114; *Harrison vs. Trustees, &c.,* 12 Mass., 456; *Marden vs. Babcock et al.,* 2 Met., 103; *Waters vs. Randall,* 6 Met., 482. We are entirely satisfied with the reasoning of C. J. PARKER in the case first cited upon this point. In these and numerous other cases in all the courts of the country, such instruments are spoken of as mortgages—not equitable mortgages merely, but mortgages—which, in the absence of any qualifying words, must be intended to mean legal mortgages. Indeed in many of the cases they were legal actions, as in the case in 6 Blackf.; *Fridley vs. Hamilton,* 17 S. & R.; *Jaques vs. Weeks,* 7 Watts, 267. In the latter case, the court says that an absolute deed with a separate defeasance "is to be considered *in law* in the nature of a mortgage." In all these cases we see no suggestion that such instruments amount merely to an equitable mortgage, nor do the elementary writers upon the subject use any such qualification. On the contrary the distinction between a legal and an equitable mortgage is of a different character, and is thus stated in 1 Hill. on Mort., 451: "In addition to the actual conditional conveyance of land, *which constitutes a legal mortgage,* courts of equity have recognized certain other liens arising from the implied agreement of parties or the justice of the case, but not depending upon any express transfer of title. These are usually termed equitable mortgages." We can see no reason, either on principle or authority, why the rights of the parties in the land should be held to be any different, where the mortgage is executed in two instruments, from what they

are where it is in one only. The intent and substance of the transaction is the same, though there may be a slight difference as to the manner in which the grantor is to become repossessed of the property. The two instruments being executed together as parts of one agreement, are in law but one agreement, and although the character of the instruments might be changed by recording one and not the other, yet where both are recorded, as in this case, their character is fixed, and it is notice to everybody that it is but a mortgage. We must hold, therefore, that the grantee had only the rights of a mortgagee, and the grantor had all the rights of a mortgagor, and consequently that his interest might have been sold on execution.

And as it appears that the interest of *Upmann* in the property was probably ample to pay the debt, and his title being clear, inasmuch as the parol trust of which he testified was void, we think a receiver should not have been appointed, but that an order should have been made staying proceedings, that the plaintiff might sue out a new execution and sell the property thereon. 4 Sandf., 718; 4 Paige, 574; 11 How. Pr. R., 528. This would leave the debtor the time for redemption which the statute provides. This, we think, ought not to be cut off in a case like this, and though it might possibly be preserved by an appropriate order on a sale by a receiver, yet it will probably be less liable to mistake and uncertainty if the manner prescribed by statute for sales on execution is observed.

The order appealed from must be reversed, with costs, and the cause remanded.