## SEYMOUR vs. BRIGGS.

APPEAL FROM CIRCUIT COURT, KENOSHA COUNTY.

Heard March 15.]                    [Decided June 4, 1860.

*Creditor's Bill—Finding—Practice—Conveyance.*

The code has abrogated actions in the nature of creditor's bills.

On an appeal the supreme court will review the testimony to see whether the evidence will sustain the finding of the court below; and if it do not, the case will be reversed for that reason.

Where S. made a deed of land to B. for a nominal consideration expressed in the deed; but the real consideration was, as appeared by proof, an amount due from S. to his daughter, the wife of B., for services, &c., a life lease from B. to S. in other lands, and love and affection toward his daughter: Held that such a transaction could not be treated as made with intent to defraud creditor's, nor was it voluntary and without consideration.

This was an action commenced by Celim L. Seymour, against William Seymour and Cyrus Briggs, in the nature of a creditor's bill. The complaint averred the recovery of a judgment on the 15th of May, 1858, against William Sey-

mour, and the issuing of execution, and return thereof unsatisfied; that on the 9th of February, 1855, the defendant, William Seymour, was possessed of the west half of block 21, in Kenosha, on which was a large two story brick house, and out-houses, of the value of from $4000 to $6000; that on that day he made a warranty deed of one-half thereof to Briggs, expressing, as the consideration thereof to be for $1500, which was recorded, &c.; but the complaint denied that there was any consideration. Briggs was the son-in-law of Seymour, and though there had been dealings between them, yet they did not amount to $1500, and they had been otherwise paid and settled for. Briggs had lived on and used the premises without paying any rents therefor; and the deed had been given to Briggs because of the importunity of Briggs, who had an undue influence over the old man, his father-in-law. On the 18th of July, 1856, Seymour and his wife conveyed the other undivided one-half of the block to Briggs, by warranty deed, for the nominal consideration of one dollar, which was recorded July 18, 1858; and possession of the premises was surrendered at the same time to Briggs, who has continued to occupy the same. The design and intent of these deeds was to place the property out of William Seymour's hands into the hands of Briggs, with intent thereby to hinder and delay the plaintiff from the recovery of his lawful debts. The complaint prayed a discovery, and an injunction against waste, and from selling the land; and that the judgment might be made a lien thereon, and the land sold to pay the judgment.

William Seymour made no answer to this complaint. The answer of Briggs denied that the deeds were made by Seymour to him under any undue influence exerted over him, or with intent to defraud or delay any creditor of Seymour. In 1846 he married the daughter of Seymour, who was then 33 years of age, and had lived with and worked for her father from her majority, and at the time was claiming compensation for her labor and services, according to his promise made to her, and for which he owed her two lots, and $800; and in 1847 they agreed that Seymour should expend upon these lots, which were then worth about $400, from $800 to $1000, and that Briggs should furnish the balance, necessary to build the house, and that it should be occupied by them in common, during the life time of Seymour, and then it should belong to Mrs. Briggs. In accordance with this agreement they built

the house &c., at an expense of $2000, Seymour furnishing $950, and Briggs the balance. The two families resided together in the house until the making of the deed in 1855, Briggs having expended the further sum of $750 on the premises. About the same time Seymour made another deed for the remaining half of the land, which was delivered to John B. Jilsun, to be by him delivered to Mrs. Briggs after Seymour's death. On the 18th of July, 1856, Seymour and Mrs. Briggs and her husband, agreed to make and execute a life lease to Seymour of other premises in Kenosha, of the value of $1500, and Seymour made a deed of the half of the block 21 to Mrs. Briggs, and at the same time the deed in the hand of Jilsun was destroyed. The answer further averred, that the judgment was obtained by collusion between the plaintiff, who was the son of William Seymour, and not upon any *bona fide* debt due to the plaintiff. That at the time of the making of the deeds, William Seymour was perfectly solvent, and also at the time of the return of the execution unsatisfied, he had real and personal property unincumbered, and not exempt, to a large amount, and that the real estate sold on the execution, and bid in by the plaintiff, was worth five times the amount he paid for the same, and more than twice the amount of the judgment and costs.

The case was tried by the court as an equity case, and the plaintiff read his judgment, which was by confession, execution, and return thereon, which were severally excepted to, but as the court do not decide the points excepted to, they are omitted here; also the records of the deeds given to Briggs, and proof of the value of the west half of the block, in 1855-6, $5000, and an annual rent of $250, and rested.

The defendant asked for a nonsuit. 1. Because the plaintiff has not shown any thing to impeach the consideration of the defendant's deeds that they were not given for a good and valid consideration. 2. Because the return of an execution in October, 1858, unsatisfied, is no evidence that the defendant, William Seymour had not sufficient property in July, 1856, to pay his debts; which motion was overruled, and defendant excepted.

The defendant then examined witnesses upon the validity of the judgment, as set up in his answer; he was also sworn in his own behalf, as to the whole of his answer, as also his co-defendant William Seymour, and John B. Jilsun, concerning the deeds. And then the plaintiff was himself examined on

his own behalf. This evidence occupies 29 pages of printed matter, and must be omitted.

The circuit judge found as follows:

"That said Celim L. Seymour, on the 9th day of April, 1858, recovered a judgment in his favor, against the said William Seymour, in the circuit court for the county of Kenosha, for the sum of $6,053 88, on a demand arising upon a contract for money, which amount of said judgment includes the amount also of the costs and disbursements taxed in that action, and that said judgment was duly docketed in the office of the clerk of said circuit court, on the 9th day of April, A. D. 1858; that for the purpose of collecting the said judgment, said Celim L. Seymour caused execution to be duly issued to the sheriff of Kenosha county, and delivered to him, on the 15th day of May, A. D. 1858, by which execution the said sheriff was commanded to satisfy said judgment out of the personal property of said William Seymour, in his county, or if sufficient personal property could not be found, then out of real property in his county, belonging to said William Seymour, on said 9th day of April, 1858, or at any time thereafter, in whose hands soever the same might be, and return said execution in sixty days after its receipt by said sheriff, to the clerk of the said circuit court of Kenosha county, and that before it was delivered to said sheriff, it was duly endorsed by the attorney of said plaintiff, whose name was subscribed thereto, with a direction for said sheriff to make thereon $6,053 88, and interest from April 9th, A. D. 1858, besides his fees, costs and charges. That at the time of docketing said judgment, and issuing of said execution, the said William Seymour resided, and still continues to reside, in the county of Kenosha aforesaid; and also a general term of said circuit court has intervened and expired between the docketing of said judgment and the issuing of said execution at which said William Seymour might have made any motion for cause to set aside said judgment; that said sheriff of Kenosha county duly returned to said writ of execution, that by virtue thereof he had made thereon $320 75, to apply on said execution; and as to the balance, he returned the same wholly unsatisfied for want of goods and chattels, lands and tenements, of said William Seymour, in his county, whereon to levy or make the same; and that said execution was duly filed with the clerk of said circuit court, with said sheriff's return thereon, before the commencement of this action

That said judgment still remains in full force, virtue, and effect, and it has not been paid, nor any part thereof, save and except said sum of $320 75, so much made on said execution; and that there still remains actually due to the plaintiff, said Celim L. Seymour, the whole of said $6053 88, and interest thereon from April 9th, 1858, except said sum of $320 75, made on said execution, October 16th, 1858.

"And this court further finds the cause and consideration of said judgment was money had and received of said Celim L. Seymour, by said William Seymour, and by him appropriated to his own use before February 9th, 1855, and which belonged to said Celim L. Seymour, and interest accrued thereon; and which indebtedness of said William Seymour to said Celim L. Seymour was known to said Cyrus Briggs and William Seymour before February 9th, 1855.

"That for several years before, and up to the 9th day of February, A. D. 1855, the said William Seymour had title to that tract or parcel of land lying and being in the first ward of the city of Kenosha, Wisconsin, to wit: the west half of block 21, in the south-east quarter of section 31, town 2, north of range 23 east, on which was and still is erected and standing a dwelling-house, barn, and out-houses, of between the value of $3,500 and $5,000; and also 80 acres of land, lying and being in the county of Dane, Wisconsin, being the south half of the south-west quarter of section number 18, in township number 8, north of range number 9, east.

"That on the 9th day of February, 1855, said William Seymour made, executed and delivered to the said Cyrus Briggs, in Kenosha, a warranty deed, conveying to him the undivided half of said west half of said block 21; and that on the 9th day of February, 1855, said Cyrus Briggs caused said deed to be recorded in the register's office of Kenosha county, in book "F," of records of deeds, on pages 90 and 91; that said deed was made upon a good and valuable consideration, and without intent to hinder, delay or defraud the creditors of said William Seymour.

"And the court further finds, that at about the time of said William Seymour's making the deed last aforesaid, he also made, executed and delivered to Cyrus Briggs a deed of said 80 acres of land, situated in Dane county, Wisconsin; and after said Briggs had retained the same several months, he re-delivered the same to said William Seymour, with intent to re-convey the title to said land to said William Seymour;

and that thereupon said deed was destroyed by the parties thereto. The said last mentioned deed to said Cyrus Briggs was a voluntary conveyance, and without consideration, and void as against the creditors of said William Seymour.

" And the court further find, that on the 18th day of July, 1856, said William Seymour, and wife, Almeda Seymour, conveyed to Cyrus Briggs, his heirs and assigns, by deed, with covenants of warranty, the other undivided half of the west half of said block 21, in the first ward of Kenosha city, which deed was voluntary and without consideration, and was made with intent to hinder and delay the creditors of said William Seymour of their lawful demands against him ; that said last mentioned deed was duly recorded in the office of the register of deeds for Kenosha county, in volume " H," of records of deeds, on pages 232 and 233, at $5\frac{1}{2}$ o'clock, P. M., of July 18th, A. D. 1856.

" That said William Seymour, at the time last aforesaid, delivered up possession to Cyrus Briggs of the whole of said last above described premises, who from thence hitherto has and still does continue to occupy the same to his sole use.

" That at the time of said William Seymour's making the deed of conveyance last aforesaid, he had not property or means that was not exempt from levy and sale on execution, sufficient to pay his debts, aside from the property conveyed by the deed last aforesaid ; that the conveyance last aforesaid of the undivided half of said west half of block 21, does not hinder the plaintiff in the collection and recovery of his said debt.

" That the notices required to be filed in this action, by the 37th section of the late code of procedure, was filed with the register of deeds of Kenosha county, where the said block 21 is situated, on the 24th day of November, A. D. 1858, which notice was of the pendency of this action, containing the names of the parties, the object of the action, and the description of the property aforesaid in that county, affected thereby.

" And the court finds the conclusions of law in this case as follows : That the said deed, bearing date the 18th day of July, A. D. 1856, and the record thereof, and also the deed of the 80 acres, being the south half of the south-west quarter of section 18, in town 8, north of range 9, east, is void as against the operation and lien of plaintiff's judgment against said William Seymour ; that the undivided half of the said west half of block 21, in the first ward of the city of Kenosha, is

subject to the said judgment of the plaintiff, and that it is a lien thereupon, and is liable to be sold under and by virtue of said lien, to make the money remaining due and unpaid upon the said judgment; that the said Celim L. Seymour has lawful right to sell said undivided west half of said block 21, under and by virtue of any execution that may be issued upon said judgment; and that the same, or so much thereof as shall be necessary and sufficient to pay the amount due the plaintiff for principal and interest, and costs on said judgment, may be sold thereon, and all the right, title and interest the said defendants, or either of them, had in said undivided half of said west half of said block 21, on the 9th day of April, A. D. 1856, or at any other time, may be sold upon said exemption, for the purpose aforesaid; and that the purchaser, upon said execution, or his assigns, in case the said land and premises be not redeemed, in manner provided by law, will acquire, under and by virtue of said judgment, and sale thereunder, in manner required by law, the same right and title of said undivided half of said west half of said block number 21, as he or they would have acquired, had not the deed of conveyance thereof aforesaid, which is recorded in the register's office of Kenosha county, July 18th, 1856, in book "H," of records of deeds," on pages 232 and 233, never been made, executed and delivered, or recorded, and that said William Seymour and Cyrus Briggs, and their heirs and assigns, should be ordered to make, execute and acknowledge, in due form of law, and deliver to said purchaser or purchasers, or their heirs and assigns, on such execution sale, at the end of twenty-seven months after such sale, (if not previously redeemed,) deeds, conveying all their rights, title and interest of, in or to said undivided half of said west half of said block 21, or so much thereof as shall be sold on such execution; and that such purchaser, and their heirs and assigns, be let into the peaceable possession thereof, and of the amount that shall be sold, on the delivery to him or them of the sheriff's deed of said sale.

"That on docketing the said judgment, in the office of the clerk of the circuit court for Dane county, the same may be a subsisting lien upon said 80 acres of land lying in that county, taking preference to any deed heretofore made by William Seymour to said Cyrus Briggs, that a receiver be appointed at this or any subsequent term of this court on application of the plaintiff, to which receiver the said William

Seymour assign in the manner required by law, and for the purpose of satisfying said judgment, all property he may have, except such as is not exempt from levy and sale by virtue of an execution, and except his earnings for sixty days previous to the commencement of this action; also that such assignment be of all debts, claims, dues and demands, valuable things, moneys and choses in action, and other things of every manner or description, that the same be applied to the satisfaction of said judgment; also that the said Cyrus Briggs be forever enjoined from selling, deeding, conveying or in any way incumbering or disposing of the said real estate, that is so subject to said judgment lien, unless said judgment be satisfied out of the other property than said real estate; also that the said plaintiff is entitled to judgment in this action in accordance with this finding, and that the parties have leave to apply to this court for further orders and directions in the premises.

   " Therefore it is ordered, on motion of plaintiff's said attornies, that judgment be entered herein, in plaintiff's favor, in accordance with the finding, together with the costs, fees and disbursements of the plaintiff in this action, to be taxed, and let the plaintiff have execution thereof against the defendants."

Whereupon judgment was entered up upon said finding, and in accordance therewith, by the clerk, upon the motion of the plaintiff's attorneys.

The defendant, Briggs, excepted to the decision of the court upon the following matters of law arising upon the trial of this cause.

1. Because the court refused a jury to try the issues of fact made by the pleadings in this action, the same having been asked and demanded by the defendant, Briggs. 2. Because the court admitted the judgment of the plaintiff against William Seymour, of April 9th, 1858, in evidence. 3. Because the court admitted the execution issued on the said judgment in evidence and the return made upon the same by the sheriff. 4. Because the court refused a non-suit on the close of the plaintiff's evidence. 5. Because the court in its findings and judgment held the judgment of Celim L. Seymour against William Seymour, of the 9th of April, 1858, good, valid and of force against the interest of the defendant, Briggs, in the undivided half of the west half of block 21 in the first ward of the city of Kenosha, acquired by deed of conveyance from said William Seymour and wife, of July 18th, 1856. 6. Be-

cause the court decided the deed of William Seymour and wife
to Cyrus Briggs above named, and which was recorded in vol-
ume " H" of deeds in the register's office of Kenosha county,
being a conveyance of his homestead, void as against the plain-
tiff's judgment of April 9th, 1858, declaring the same by his
finding as "being voluntary and without consideration, and
made with intent to hinder and delay the creditors of said
William Seymour of their lawful demands against him."    7.
Because the court set aside said deed and adjudged the prem-
ises therein conveyed, subject to the lien of the plaintiff's
judgment against William Seymour, of April 9th, 1858, and
liable to be sold upon execution issued upon said judgment,
and that the same may be sold upon execution.    8. Because
the court by his said judgment enjoined the said Cyrus Briggs
from selling, encumbering, or committing waste, upon the un-
divided half of said west half of block 21 aforesaid.    9. Be-
cause the court had no jurisdiction to render the judgment in
manner and form as herein adjudged.

From the judgment entered upon the finding the defendant
appealed.

*Jilsun, Head & Lyon*, for the appellant.

*Pettitt & Lovell*, for the respondent.

*By the Court*, COLE, J.    A preliminary question has been
raised in this case, namely, whether this complaint can be
sustained.    It is in the nature of a creditor's bill, and the
suit was commenced since the adoption of the code.

In the case of *Graham et al. vs. The La Crosse & Milwau-
kee Railroad Co.*, 10 Wis., 459, we held that the remedy
by creditor's bill was abrogated by the code, and that the
proceedings supplementary to an execution provided by that
enactment, were intended as a substitute therefor.    From
the conclusion at which we have arrived upon the testimo-
ny we do not feel called upon to consider whether the de-
cision of *Graham et al. vs. The La Crosse & Milwaukee R.
R. Co.*, would control this case, or to determine whether the
objection taken is now available at this stage of the cause, it

not having been raised by demurrer or answer. But as our opinion is with the appellant upon a point which we will now proceed to discuss, the further consideration of this objection is immaterial.

The circuit judge came to the conclusion, upon the evidence, that the deed made and executed by William Seymour and wife, on the 18th day of July, 1856, by which they conveyed to the appellant, Briggs, the undivided half of the west half of block 21, in the first ward of Kenosha, was without consideration and made with the intent to hinder and delay the creditors of said Seymour in the collection of their lawful demands, and therefore should be held void as to the respondent.

After a careful consideration of the testimony, we think it fails to sustain this conclusion. The case abundantly shows that William Seymour had promised and intended conveying to his daughter, Mrs. Briggs, some real estate in Kenosha, partly as an advancement to her, and partly as a compensation for her services before marriage. This purpose he attempted to effectuate first, by executing a deed to her of the whole premises in controversy, subsequently by conveying an undivided half thereof. But neither of these conveyances, for some reason, was ever delivered. William Seymour and Briggs had built the house upon the premises in 1846–7. The latter had contributed towards the erection of the building and improvements some fifteen hundred dollars or more, and in 1855 an undivided one-half of the premises was deeded by Seymour and wife to Briggs.

Beyond all question, this transaction was free from all susspicion of fraud. Briggs had paid a full, adequate and sufficient consideration for the property, by the amount which he had contributed towards the common improvement. The two families lived together in the same building until after the second marriage of William Seymour, when they con-

cluded to live separate. Then it appears the following arrangment was entered into. Briggs purchased a certain house and lot worth $1,200 or $1,400, the annual rent of which would be $75 or $100. He gave Seymour a life lease of these premises. It was in consideration of this lease, and of the claims of Mrs. Briggs, whatever they were, and of natural love and affection, that William Seymour and wife made and executed the conveyance of July 18th, 1856. But we are unable to discover any thing in the testimony, which tends to show that this conveyance was made with intent to defraud creditors. There appears to have been a good and valuable consideration for the deed. We do not intimate that the life lease was worth as much as the undivided half of block 21. But that it was a good, valuable, if not adequate consideration for that property cannot be denied. As before observed it is apparent that Mr. Seymour expected and intended to convey to his daughter, Mrs. Briggs, some of his real estate. How much in justice and equity was due her for services rendered before her marriage it is not easy to determine. Considering her age at the time of marriage, and that she had always worked for her father as much as her health would permit, and it was fair to assume that Mr. Seymour was indebted to her to some extent. It was this indebtedness, the life lease, and the affection which he entertained for his daughter which together constituted the consideration for the conveyance of July, 1856. From this it will be seen that that conveyance was not "voluntary and without consideration," as the circuit judge states in his finding of facts. And we think the evidence equally fails to snow any fraudulent design in executing the same.

The conveyance of July 1856 being considered valid, made *bona fide* and for valuable consideration, it must stand as against the respondent's judgment. An examination of the merits of that judgment becomes therefore unnecessary, al-

though we think it very clear that that judgment could hardly be sustained in a court of equity for the full amount. But we will not discuss this matter.

The judgment of the circuit court must be reversed, and the cause remanded for further proceedings in accordance with this opinion.