Smith vs. Weeks and another.

## Smith vs. Weeks and another.

*February 21 — March 18, 1884.*

*Supplementary proceedings — Contempt — False imprisonment — When officer protected by process — Abuse of process — Nonsuit.*

1. Proceedings supplementary to execution are a substitute for a creditor's bill in equity.
2. Sec. 3031, R. S. was intended to provide only for reaching property not tangible by execution.
3. In proceedings for a contempt in disobeying an order of the court or a commissioner, the order should be recited in the writ. If the order so recited is on its face void for want of jurisdiction the writ is no protection to the officer executing it.
4. The statute (sec. 3037, R. S.) authorizing the punishment as for a contempt of a person disobeying an order made in supplementary proceedings, should be strictly construed.

5. A writ of attachment for a contempt in disobeying an order made under sec. 3031, R. S., recited that it appeared to the commissioner making the order that the judgment debtor "has property . . . which he unjustly refuses to apply *to* the satisfaction of the judgment," but did not state that there was proof thereof "*by affidavit to the satisfaction* of" the commissioner, although it did subsequently recite that the order was made "upon sufficient affidavit." *Held*, that the writ was no protection to the officer making the arrest. [Whether the use of the words "*to* the satisfaction," etc., instead of "*towards* the satisfaction," was a material departure from the statute, *quære*.]

6. An order under sec. 3031, R. S. must require the debtor to answer concerning the specific property which he unjustly refuses to apply, etc., and cannot require a general discovery.

7. The evidence in an action for a false imprisonment tended to show that the plaintiff — a locomotive engineer on a passenger train — was arrested, on an attachment for contempt, at night, as he was preparing his engine to take out a train and when it was dangerous to leave the engine, and at so late an hour that it was impossible to procure bail; that the arrest might have been made at any time during the day; and that he was confined during a very cold night with persons charged with felony in' a filthy and vermin-infested cell, with insufficient bedding. *Held*, that such evidence tended to show an abuse of process, and that a nonsuit was improper.

APPEAL from the Circuit Court for *Dane* County.

The case is stated in the opinion.[1]  At the close of the testimony the court granted a peremptory nonsuit, and from the judgment entered accordingly the plaintiff appealed.

---

[1] The writ of attachment under which the defendants sought to justify the arrest and imprisonment was as follows:

*The State of Wisconsin to the Sheriff of the County of Dane;* It appearing to me that the plaintiff herein duly recovered a judgment against the defendant, *Eugene Smith*, in an action before M. T. Bailey, Esq., one of the justices of the peace in and for said Dane county, on the 23d day of November, A. D. 1880, for $212.94 damages and costs, and that a transcript of said judgment so rendered as aforesaid, was duly filed and docketed in the office of the clerk of the circuit court for Dane county, on the 23d day of December, 1880, and that an execution against the property of said judgment debtor was on the 23d day of December, A. D. 1880, duly issued to the sheriff of Dane county,

Smith vs. Weeks and another.

*T. B. Chynoweth*, for the appellant, argued, among other things, that under sec. 3031, R. S., the commissioner could not, as here, order the debtor to be examined as to his property generally. *Nieuwankamp v. Ullman*, 47 Wis., 170; *Stephens v. Wilkins*, 6 Pa. St., 260; Riddle's Sup. Proc. (2d ed.), p. 35 of the supplement. Being an entirety, the order was void *in toto* for this reason, differing from *Detling v. Weber*, 29 Wis., 559; *Mock v. Erdmann*, 28 id., 113. The recital in the writ that the order was made "upon sufficient affidavit" does not counteract the other recitals, showing want of authority and that it was impossible for the affidavit to be sufficient. *Rape v. Heaton*, 9 Wis., 328; *Bridge v. Bracken*, 3 Pin., 73; *Pollard v. Wegener*, 13 Wis., 569; *Blodgett v. Hitt*, 29 id., 169; *Bohlman v. G. B. & M. R'y*

Wisconsin; that the said judgment debtor, *Eugene Smith*, resided in said Dane county at the time of the issuing of said execution, and still so resides; that the said sheriff has not returned said execution, but the same still remains in his hands, wholly unsatisfied; that the said defendant, *Eugene Smith*, has property, to wit, the household furniture for the purchase price of which this judgment was rendered, which he unjustly refuses to apply to the satisfaction of this judgment.

And whereas, subsequent to the issuing of said execution, to wit, on the 23d day of December, A. D. 1880, an order was made by me, a court commissioner of the circuit court for the county of Dane and state of Wisconsin, upon sufficient affidavit, requiring the said judgment debtor, *Eugene Smith*, to appear before me, at the office of Smith, Rogers & Frank, in the city of Madison, Dane county, Wisconsin, on the 30th day of December, A. D. 1880, at ten o'clock A. M., to make discovery on oath concerning his property, and to abide and perform such further or other order as might be made by me in the premises, and in the meantime and until further order to the contrary, enjoining and restraining him from making any transfer or other disposition of his property, not exempt by law from execution, or from any interference therewith, and that said order was duly served on said judgment debtor, *Eugene Smith*, on the 28th day of December, A. D. 1880, by N. T. Davies, at the city of Madison, Dane county, Wisconsin, by delivering to and leaving with the said *Eugene Smith* personally, a true copy of said order and of the affidavit on which it was founded, and at the same time showing him the said original order with my signature

*Co.*, 40 id., 168; *Smith v. McCulloch*, 42 id., 567. The commissioner could not, even if he had attempted it, establish jurisdiction by determining that he had it. *Nat. Bank of Chemung v. Elmira*, 53 N. Y., 49; *Arnold v. Booth*, 14 Wis., 187; *Pollard v. Wegener, supra*. The recital falls short of showing that the order was made "upon proof by affidavit to the satisfaction of the commissioner," as required by sec. 3031, R. S. *Smith v. Bean*, 130 Mass., 298; *Carratt v. Morley*, 1 Q. B., 18; *State ex rel. Kellogg v. Gary*, 33 Wis., 102–104.

For the respondents there was a brief by *Smith & Rogers*, and oral argument by *Mr. Smith*. They contended, *inter alia*, that if a writ is issued by a court or officer having authority to issue such process, and there is nothing on its face to apprise the officer to whom it is delivered for service

thereto signed or attached; all of which appears to my satisfaction by the affidavit of said N. T. Davies, now on file herein.

And whereas, the said *Eugene Smith* did not appear before me at the time and place designated in said order, although said plaintiff attended there, by his attorneys, Smith, Rogers & Frank, and after waiting then and there for half an hour after and past the hour designated in said order for the appearance of said *Eugene Smith*, and said *Eugene Smith* not appearing, and then and there being called in open court before me, and failing to appear as required by the aforesaid order, and the counsel for the plaintiff having moved that an attachment should be issued against him, the said *Eugene Smith*, to answer touching the contempt aforesaid, in failing to appear before me as required by said order made by me, bearing date December 23, 1880.

Now, therefore, in the name of the state of Wisconsin, you are hereby required and commanded to arrest the said *Eugene Smith*, and to bring his body before me, at the office of Smith, Rogers & Frank, in the city of Madison, in said county of Dane, forthwith, then and there to answer touching the contempt aforesaid, and further to perform and abide such order as shall then be made in this behalf; and have you then and there this writ, and make and return a certificate under your hand, of the manner in which you shall have executed the same.

*Dated December 30, 1880.*

PETER B. KISSAM,
Court Commissioner, Dane County, Wis.

that in the particular case there was no authority for issuing it, he is protected in obeying its command. When the party who procured the writ to be issued, or the officer who issued it, is sued, they are sometimes required to show not only a writ which does not appear on its face to be invalid, but one which is valid; but no such burden is placed upon the ministerial officer. Cooley on Torts, 172; 1 East's P. C., 309, § 78; *Lewis v. Palmer*, 6 Wend., 367; *Warner v. Shed*, 10 Johns., 139; *Hill v. Haynes*, 54 N. Y., 153; *Savacool v. Boughton*, 5 Wend., 170; *State v. Weed*, 21 N. H., 262; *State ex rel. Chappell v. Giles*, 10 Wis., 101; *Sandford v. Nichols*, 13 Mass., 286; *Bogert v. Phelps*, 14 Wis., 88; *Young v. Wise*, 7 id., 128; *Grace v. Mitchell*, 31 id., 533; Crocker on Sheriffs, secs. 283, 285. Supplementary proceedings do not lie merely to reach property of such a nature as not to be tangible by execution. They are a substitute for, and co-extensive with, the equitable remedy by creditor's bill; and there was a large class of cases in which, after execution issued, that remedy could be pursued against property which was by its nature subject to sale on execution, when some fraudulent or inequitable obstruction needed to be removed. *Crippen. v. Hudson*, 13 N. Y., 161; *McElwain v. Willis*, 9 Wend., 548, per NELSON, J.; 3 Pomeroy's Eq. Jur., sec. 1415; *Beck v. Burdett*, 1 Paige, 305; *Gates v. Boomer*, 17 Wis., 455; *Cornell v. Radway*, 22 id., 260. There was nothing on the face of this attachment to show that this was not a case where the proceedings were proper. It stated that an affidavit had been made and filed which was *sufficient*. No attempt was made in the attachment to inform the officer what that affidavit contained, and none was necessary. Sec. 3031, R. S., made the commissioner the judge of the sufficiency of the affidavit, and his determination cannot be questioned except in the proceeding itself. The sheriff was entitled to suppose that the question had been rightly determined, and was protected in acting upon that supposition.

*Klauber v. Charlton*, 47 Wis., 564; *Rugg v. Spencer*, 59 Barb., 383. To sustain a verdict against an officer on the ground of an abuse of process, there must be such a complete departure from the line of duty, such an improper and illegal exercise of the authority, such an active and wilful wrong perpetrated, as will warrant the conclusion that its perpetrator intended from the first to do wrong, and to use his legal authority as a cover to his illegal conduct. *Taylor v. Jones*, 42 N. H., 25; *Fullam v. Stearns*, 30 Vt., 443; *Andrea v. Thatcher*, 24 Wis., 471.

ORTON, J. This action is brought to recover damages against the defendants, as sheriff and deputy sheriff of Dane county, for unlawful arrest, false imprisonment, and abuse of process. The defendants justified the arrest and imprisonment by an attachment, issued by a court commissioner of said county, for contempt in not appearing and answering according to an order of said commissioner, made and served by virtue of sec. 3031, R. S.; and denied the abuse of such process. This section provides that when an execution is issued and before its return, upon proof that the judgment debtor " has property which he unjustly refuses to apply towards the satisfaction of the judgment," an order may be made requiring the judgment defendant to appear " to answer concerning the same."

The writ of attachment in this case recites all the antecedent proceedings, and the order which it alleges the defendant failed or refused to obey, as the cause thereof, and as a contempt of the commissioner. The order recited was that the defendant should appear " to make discovery on oath concerning his property, and to abide and perform such further or other order as might be made by [the commissioner] in the premises." The fact found by the commissioner to obtain such order was that the defendant " has property, to wit, the household furniture, for the purchase

price of which this judgment was rendered, *which he un-justly refuses to apply to the satisfaction of this judgment."* There is a verbal departure from the statute in this order, by using the word " to " instead of " towards," but whether material, *quære?* The attachment for contempt was for the disobedience of this order.

This is the first case, so far as I can ascertain, under sec. 3031, ch. 131, R. S., " Of Remedies Supplementary to Execution," which has come to this court. This chapter was borrowed from the New York Code, and this particular section was in that Code, subd. 2 of sec. 292, and in our Code was the second clause of sec. 202, ch. 120, Laws of 1856. This provision has had frequent and uniform construction in the courts of New York, and such construction we are inclined to adopt, because reasonable. Proceedings supplementary to execution are a substitute for a creditor's bill in equity. *In re Remington*, 7 Wis., 643; *Graham v. La C. & M. R. R. Co.*, 10 Wis., 459; *Seymour v. Briggs*, 11 Wis., 196; *Barker v. Dayton*, 28 Wis., 367. The statute, as well as the proceeding by creditor's bill, clearly contemplates two distinct causes for a creditor's bill and of an order upon a judgment defendant to appear before the court for examination and disclosure: (1) after an execution has been returned unsatisfied in whole or in part; (2) after an execution has been issued, and before its return. The latter was the proceeding in this case. The jurisdiction of a court of chancery by creditor's bill in each of these two distinct classes of cases is most exhaustively treated in *McElwain v. Willis*, 9 Wend., 561. In the first case the legal remedies must have been exhausted by a return of the execution before the interposition of equity to aid the plaintiff in the collection of his debt out of assets of the defendant liable to levy. In the second case equity lends its aid to a proceeding at law to subject the property of the debtor to the execution, which he owns, but which for some reason cannot be levied upon and sold

because not subject to levy, or by reason, perhaps, of some act of the debtor which will be tantamount to an unjust refusal to apply it towards the satisfaction of the judgment. It is said in that case that the defendant "possessed choses in action, or equitable interests, not tangible by execution;" and, further, that "the jurisdiction of the court rests upon the right or title of the complainant to the property in question, acquired by the proceeding at law upon the judgment and execution; and, consequently, the return of the latter by the officer is not only not essential, but would be fatal to the relief;" and, again, "it is to remove some fraudulent or inequitable obstruction interposed by the defendant to the collection of the judgment, independently of which the remedy would have been ample at law." In the opinion of Senator TRACY, in the same case, it is said, after defining the jurisdiction of a court of equity in the first class of cases, "the other, where the property has been removed before a lien was obtained, or where it consists in choses in action, or interests not liable to execution." In that case it is held that the allegations of the bill must show equitable grounds of relief under one or the other of the causes, or the court has no jurisdiction in the case. This case is in agreement with other cases of creditors' bills, as shown by the authorities cited in the opinions. In *Clark v. Bergenthal*, 52 Wis., 103, in a case under the first class, where the execution must have been first returned before an order could be made requiring the defendant to make disclosure of his property, Mr. Justice CASSODAY says, in the opinion, after speaking of the officers who may make the order: "Each of the officers mentioned can obtain *jurisdiction in the manner prescribed, and in no other way.* . . . If the proper affidavit is made, and the proper facts exist, the commissioner *obtains jurisdiction.*" That proceeding was under the first class of cases of execution returned, and the statute in respect thereto does not in terms require any affidavit or other proof of the facts, but it

is of course clearly implied that proof should be made in some way to justify the order. In respect to the second class of cases, the statute is specific, that "upon proof by affidavit to the satisfaction of the judge, etc., that any judgment debtor, etc., has property which he unjustly refuses to apply towards the satisfaction of the judgment, etc., he may make an order," etc. In *Lamonte v. Pierce*, 34 Wis., 483, the present chief justice recognized an affidavit stating all the essential facts as necessary to give the court or officer jurisdiction in the first class of cases, and held the affidavit in that case as sufficient in all respects.

The contempt in this case consisted in the disobedience of the defendant of the order of the commissioner, and is the cause of his arrest, and of course the order is a necessary part of the warrant or attachment. In this case the order and the proofs, if any there were, are recited in the writ by which the defendants seek to justify the arrest, so that if the order appears to be void on its face the attachment also so appears, and shows that the commissioner had no jurisdiction.

A reference to the source of this statute as to the second class of cases throws much light upon the question of the groundwork of the proceeding. This provision in subd. 2 of sec. 292 of the New York Code of Procedure, from which we borrowed it, was analogous to subd. 2 of sec. 8 of the act to abolish imprisonment for debt, etc., in that state in 1831. To obtain a warrant under that act, "satisfactory evidence had to be adduced to the officer that *the debtor had property which he unjustly refused to apply to the payment of the judgment.*" The same language, substantially, is used in this provision. It was held under that law that the property sought to be reached was not subject to seizure on execution, such as property consisting of money or choses in action, not in view of the officer, or so situated that it became the equitable duty of the debtor to apply it on the

judgment. *Steward v. Biddlecum*, 2 N. Y., 107; *Sackett v. Newton*, 10 How. Pr., 560; *People ex rel. Van Valkenburg v. Recorder of Albany*, 6 Hill, 429. Under both statutes "the applicant is required to state a plain case by affidavit, to give jurisdiction to the officer to make the order." *Devin v. Devin*, 17 How. Pr., 514. In *Berthelon v. Betts*, 4 Hill, 577, it is said by Judge COWEN, in a case under the non-imprisonment act: "We have always understood the provision in question as no more than a *statute execution* against choses in action and other effects *not tangible by the ordinary fi. fa.*" In *Sackett v. Newton, supra*, it was held that proof by affidavit of the necessary facts is necessary to give the officer jurisdiction. In *Kennedy v. Weed*, 10 Abb. Pr., 62, it was held in a similar case of contempt that the order must show that the officer had before him the proof required by the statute, or it was *coram non judice* and no protection. In *De Comeau v. People*, 7 Robt. (N. Y.), 498, likewise involving contempt for disobedience of the order to appear and answer, it is said by the chief justice "that jurisdiction over the party to be affected by it must be acquired by establishing, by *prima facie* evidence under oath, to the satisfaction of the officer applied to, the existence or occurrence of those facts which alone authorize such a proceeding."

In the North Carolina Code the same provisions exist, and in *McKeithan v. Walker*, 66 N. C., 95, it is held that the order must show every fact necessary to give the court jurisdiction. In *Weiller v. Lawrence*, 81 N. C., 65, and in *Hinsdale v. Sinclair*, 83 N. C., 338, it is held that to authorize such an order it must appear to the satisfaction of the officer, by affidavit, (1) that there was no known property liable to execution; (2) the existence of *property, choses in action, and things of value incapable of levy.* If the order does not show such facts as having been proved to the satisfaction of the officer, it is void.

The same provisions are in the Ohio Code, and it is held

in *Edgarton v. Hanna*, 11 Ohio St., 323, that the proceeding is in aid of an execution, and does not relate *to tangible and visible property liable to levy, but to money, contracts, claims, and choses in action*, etc., and that the order must show that the necessary facts were proved to the satisfaction of the officer in order to show jurisdiction.

The same view is taken of this remedy in *Gates v. Boomer,* 17 Wis., 455, supported by *Beck v. Burdett*, 1 Paige, 305, and in *Hyde v. Chapman*, 33 Wis., 391, in which the present chief justice in his opinion recognizes the generally accepted doctrine that the statement of the necessary facts is jurisdictional, and cites *Beck v. Burdett, Gates v. Boomer, supra*, and *Cornell v. Radway*, 22 Wis., 260. In *Williams v. Sexton*. 19 Wis., 42, the present chief justice wrote the opinion, holding that the property being known and tangible, liable to levy, showed a want of jurisdiction in a court of equity, even after the return of the execution, following *Second Ward Bank v. Upmann*, 12 Wis., 499.

This special remedy in equity in aid of an execution has long existed in England, as shown by the case of *Edgell v. Haywood*, 3 Atk., 352, in the time of Lord HARDWICKE, for the purpose of reaching *choses in action*.

From these authorities, as well as from a reasonable construction of sec. 3031, R. S., we are able to determine the special and peculiar office and purpose of the provisions, which are unquestionably to reach that species of property not liable to levy by execution, such as choses in action and other rights and interests, but which the defendant ought to apply towards the payment of the judgment, and which he unjustly refuses so to apply. In respect to visible, corporeal, and tangible property liable to levy, if it has been concealed, fraudulently conveyed, or otherwise placed beyond the reach of actual seizure, then the execution must be returned in whole or in part unsatisfied, and proceedings instituted under the preceding sections to compel a discovery. When

the property of the debtor is known, and is tangible and liable to a levy on execution, there is no necessity of even a bill of discovery or supplementary proceedings, because the ordinary proceeding at law affords an ample remedy, unless it be real estate which has been fraudulently conveyed or incumbered so as to cast a cloud upon the title; and in such a case, under another jurisdiction of the court of equity, a bill will be entertained to remove such cloud, but only after the execution has been returned, as in *Hyde v. Chapman*, 33 Wis., 391.   In such a case, even, it was held that the return of the execution unsatisfied was essential to the jurisdiction of the court.

In proceedings for contempt for disobeying an order to appear and answer, or to be examined, or for any other purpose, it is a matter of course that the order should be recited in the writ in order to inform the defendant of the grounds of the alleged contempt.   It is too clear for argument or authority that such order should be one that the law authorized to be made.   It must be an order that the defendant was bound to obey.   The commissioner must have had jurisdiction to make it.   It follows, of course, that if the order recited in and made a part of the writ is on its face void for want of jurisdiction in the commissioner to make it, the writ can be no protection to the officer.   No one can be arrested and punished for contempt for disobeying an order not authorized by law.   To hold, as a thoughtless or shallow thinker might, that the party served with an order to appear before a court commissioner and submit to an examination concerning his property, when such order showed a total want of authority or jurisdiction to make it, is bound, nevertheless, to obey it at the peril of fine and imprisonment, would be to sanction an arbitrary and despotic exercise of judicial power which has never been sanctioned by any court in this country or in England.

But the question here is whether the order recited in the

writ as having been disobeyed is unauthorized by law and
without the jurisdiction of the commissioner in such a case.
The statute itself is plain that in case the execution has not
been returned, to justify an order to answer the officer must
have *proof by affidavit to his satisfaction* that the judgment
debtor has property which he unjustly refuses to apply to-
wards the satisfaction of the judgment, and then, and then
only, may he make an order requiring the judgment debtor
to appear *to answer concerning the same.* The order recited
in the writ in this case states only in respect to this fact,
which is clearly jurisdictional, that it *so appeared* to the
commissioner, without stating in what way, whether from
his own knowledge or from proof. It is recited afterwards
in the writ that the order was made " upon sufficient affi-
davit," but it is not stated that such affidavit was sufficient
proof of such fact to the satisfaction of the commissioner.
It does not appear in this recital that the commissioner had
any authority to make the order. This was a fatal depart-
ure from the statute, and, we think, goes to the jurisdiction
of that officer, and, that appearing on the face of the writ,
the writ affords no protection to the defendants to make
the arrest. They, as all others, are bound to know the law,
and must take the risks of unlawful imprisonments when the
want of jurisdiction appears upon their process.

The order is that the judgment debtor should appear " to
make discovery on oath concerning his property," etc. It
will be readily seen that this is the proper order in a case
under the first sections of the chapter, after the return of the
execution unsatisfied. The order must *be specific* as to the
property which it is alleged the judgment defendant unjustly
refuses to apply towards the satisfaction of the judgment.
It must describe it in some way so that the defendant may
know how " to answer concerning *the same.*" The order
*must* require the defendant to answer concerning that spe-
cific property, and nothing else, in such a case, when the

execution has not been returned.   This order for general discovery, in such a case, is unauthorized, and not within the jurisdiction of the commissioner to make, and the judgment defendant was not bound to obey it.

But there is a still more glaring departure from the statute, in this, as we have already seen, that the property which the judgment debtor is alleged to have unjustly refused to apply upon the judgment, is *household furniture*, liable to levy by the execution, and for aught that appeared by this order, it might have been levied upon at any time. It is tangible property, and, so far as appears in the order, was not concealed or removed beyond the reach of the execution.   It is not in respect to such property that this extraordinary remedy was provided, to be followed by fine and imprisonment in case of refusal to take and carry it to the sheriff or to the plaintiff and have it applied towards the satisfaction of the judgment.   Is a defendant bound to apply his property, which he owns and holds openly, to the payment of any judgment against him on the risk of punishment if he refuses?   Who ever heard of such a law?   It is the duty of the officer to find and seize visible and tangible property upon execution, and, if he cannot find it, to return his execution; and then the plaintiff in the judgment may have his bill in equity or supplementary proceedings, and compel the defendant to make discovery thereof.   It is only in respect to such property not liable to levy, such as choses in action, that this proceeding could have been instituted, and such are all the authorities upon the subject, as we have seen.

The construction of this statute ought to be strict.   It is, at best, a violent remedy, and the question was reserved in a *quære* in *In re Remington*, 7 Wis., 643, whether it was not unconstitutional, as authorizing imprisonment for debt in actions on contract.   In *Holstein v. Rice*, 24 How. Pr., 139, this proceeding is called " special, extraordinary, and pecul-

iar." By all rules of construction, not only this statute should be construed strictly, but the proceedings under it must follow the statute strictly or no authority is conferred by it. It is a proceeding in which a defendant in a judgment on contract may be imprisoned, and, in favor of liberty, it should strictly comply with the law.

The majority of this court have no hesitation in holding the order recited in the writ, and consequently the writ itself, void for want of jurisdiction in the commissioner,— *first,* to make the order, and, *secondly,* to issue the attachment; and that the writ affords the defendants no protection or justification for the arrest and imprisonment of the plaintiff. The statute is simple and plain, and it is strange how so many material departures from it were made in this case, so important, and involving the arrest and imprisonment of a debtor, guilty, so far as appears upon the face of the writ, of nothing except disobedience of a void order. He is charged with no fraud or concealment or other wrong in respect to his property, and so it appears in the writ.

The liberty of the citizen must not be infringed without the strict warrant of law. A warrant for arrest must show the cause. The citizen has the right to demand " the nature and cause of the accusation against him. Sec. 7, art. I, of the constitution. And in the chapter of contempts in the Revised Statutes, (ch. 117, sec. 2567), it is provided that " the particular circumstances of his offense shall be set forth in the order or warrant of commitment." The order and its disobedience are the cause of the warrant of attachment and a necessary part of it, and if that order is void the defendant was not required by law to obey it. Where the common law prevails, we have no despotic writs without an assigned cause. A writ without such cause would be like a *lettre de cachet* of an irresponsible government.

This court is unanimous in holding that there was evidence tending to show an abuse of process if it had been a

legal and valid writ. The evidence tends to show that the plaintiff, at the time of his arrest, was a locomotive engineer on the Chicago, Milwaukee & St. Paul Railway, and was employed at stated times to run a passenger train of cars from the city of Madison to the city of Prairie du Chien and return. He resided with his family in Madison. On that day he had arrived in Madison with his train about four o'clock in the morning. After a sleep at his home until eleven o'clock, he went about the town, and between two and four o'clock P. M. he was at the round-house, at the depot, looking after his engine, and the officer saw him there. The officer admitted that he saw the plaintiff, and that he inquired for him at his boarding-house during the day, and that he saw him through the window at supper. After supper the plaintiff went to the round-house and attended publicly to his work, preparing his engine for its trip, to start at nine o'clock for Prairie du Chien. At about thirty-five minutes before nine o'clock he was on his engine on the track getting up steam for its usual work. The engine was in a very dangerous condition to be left by its engineer, and could not be left with safety at that time, and there was no person whom the plaintiff knew who could be trusted with it. Just at this crisis the sheriff's officer made the arrest, and took the plaintiff to the county jail, after he had sought bail ineffectually, as he says, on account of the lateness of the hour. He protested against his arrest at such time, when there was danger in leaving his engine, and that he would not submit to be taken from it until he could leave it safely " for 400 sheriffs." He did the best he could in making the engine safe to leave in other hands, and then submitted to the officer. It was a cold night, with the thermometer fifteen to twenty degrees below zero. He was placed in a cell with two persons charged with crime, and his bedding was insufficient to protect him from the cold the whole night, and so foul was the cell with vermin that

he was obliged to throw away his clothes in which he slept. It is uncertain whether the officer actually knew the plaintiff when he saw him through the day, but he went to his house and said he saw him through the window. The plaintiff was an engineer of one of our great railroads, and if he held the writ all day without finding the plaintiff when he was about his regular business as an engineer on that road, he was guilty of great neglect of duty. The presumption is that he did know him, and knew that he could arrest him at any time during the day. But the officer fixed upon the very time when it was most dangerous to the public and most oppressive to the plaintiff. This of itself, if true, was a great official outrage. But his imprisonment, if his evidence is true, is simply barbarous in the extreme, and a most flagrant abuse of process. He was confined in the jail in violation of the statute (sec. 4952, R. S.) which prohibits the confinement of persons not criminal in the same apartments with felons and other criminals. These facts were before the jury, and, if true, certainly made a strong case of abuse of process and entitling the plaintiff to damages. The circuit court certainly committed a very grave error in taking such a case from the jury, and in ordering a peremptory nonsuit, even on the facts of abuse of process, if he deemed the process itself lawful.

*By the Court* — The judgment of the circuit court is reversed, and the cause remanded for new trial.