EMERSON and another, Respondents, vs. HUSS, Appellant.

*January 12—February 23, 1906.*

*Courts: Terms: Review of adjudications: Criminal and civil contempts: Procedure.*

1. A term for T. county which, under sec. 2424, Stats. 1898, as amended by ch. 6, Laws of 1905, is made a special term for P. county, is a separate term for P. county, commencing and ending as a term for P. county with the opening and closing of the term for T. county.

2. In such situation no judgment or final order in a special proceeding pending in P. county, but actually entered in T. county, can be reviewed at a term for A. county which is also a special term for P. county, and hence, except as provided by the statute authorizing the court to grant relief from a judgment or order or other proceeding made through mistake, inadvertence, surprise, or excusable neglect, an order entered in A. county, attempting to modify such order entered in T. county, is unauthorized, void, and of no effect.

3. There is a marked distinction in the remedies afforded and the procedure to be followed in each class between criminal contempts under ch. 117, Stats. 1898, and contempts in civil actions under ch. 150. The former have all the characteristics and incidents of a criminal prosecution in the name of the state, while the latter have those of a civil proceeding.

4. The proceedings to punish a civil contempt under ch. 150, Stats. 1898, are designed to enforce obedience to the decrees of the court, to indemnify parties to the action for their actual loss or injury, and to compel performance of duties still within the contemnor's power.

5. The provisions of ch. 150, Stats. 1898, governing civil contempts, warrant the imposition of a fine or imprisonment, or both, in cases where no actual loss or injury is shown; and when a fine is so imposed it is in the nature of a penalty, and is to be paid into the state treasury to the credit of the school fund.

6. In cases of civil contempts punishable under ch. 150, Stats. 1898, where actual loss or injury results from the alleged misconduct, *instead* of imposing a fine the proper proceeding is to order a sum to be paid to the aggrieved party to indemnify him for such loss or injury.

7. In proceedings supplemental to execution a judgment debtor, who was ordered to appear before a court commissioner to answer under oath as to his property and abide the orders of the commissioner, defaulted. Thereafter the commissioner made an order requiring the debtor to show cause before the circuit court why he should not be punished as for a contempt, and the debtor again defaulted. *Held*, that it then devolved upon the court to determine (1) whether the alleged misconduct had been committed; (2) if the debtor was found guilty, whether such misconduct was calculated to or actually did defeat, impede, or prejudice the rights and remedies of the judgment creditor; (3) if it was so found, whether an actual loss or injury had resulted to the judgment debtor from such misconduct; (4) if no resultant loss or injury was adjudged, to impose a fine or imprisonment, or both, as a punishment

for the contempt; (5) if resultant loss or injury was adjudged, to order the defendant to pay to the injured party a sum to indemnify him and to pay his costs and disbursements, and in addition, if a proper case, to coerce performance of acts and duties owing to the injured party, and still in the defendant's power to perform.

8. In such case the successive adjudication of each of the foregoing propositions was an essential and necessary step to give validity to the proceeding, and, in their absence, no foundation was shown for an order directing the judgment debtor to perform a duty theretofore omitted and still in his power to perform, to pay a fine, and in default to stand committed until the order should be obeyed.

APPEAL from orders of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Reversed.*

On August 17, 1903, an action was commenced in justice's court in Price county, and on August 24, 1903, judgment was rendered against the defendant. Thereafter a transcript of the judgment was duly filed in the office of the clerk of the circuit court for Price county. Execution issued and on December 23, 1903, was returned unsatisfied. One of the plaintiffs having died after the rendition of the judgment, the circuit court, upon proceedings, made an order reviving the action in the names of the proper parties. Thereafter the county judge of Price county, exercising the powers of court commissioner, made an order requiring the defendant in the action to appear at his office on August 16, 1904, to answer on oath concerning his property and to perform such acts as the court might deem proper to enforce the rights of the parties to the action. The defendant failed to appear as ordered, and on September 5, 1904, the county judge, as court commissioner of the circuit court for Price county, made an order requiring the defendant to show cause on September 7, 1904, at a special term of the circuit court for Price county, to be held at the courthouse in the city of Medford, Taylor county—this term was also a general term of the Taylor county circuit court,—why he should not be punished as for a

contempt for his misconduct in refusing and neglecting to appear and answer as ordered.   Defendant failed to appear and the court made the following order:

"An order dated the 5th day of September, A. D. 1904, having been granted against the above-named defendant, requiring him to show cause on the 7th day of September, 1904, at this term, why he should not be punished for contempt for his alleged misconduct in refusing and neglecting to appear before the Hon. E. W. Murray, pursuant to an order duly served on him, and answer on oath concerning his property and to abide and perform such further and other order as by him made in the premises, and said *J. E. Huss,* defendant, having failed to appear before the court on date, and after hearing J. W. Hicks, attorney for the plaintiffs, and examination of the record of the proceedings before the county judge of Price county herein, and the affidavit of J. W. Hicks, attorney for the plaintiffs, and being advised in the premises, and the court having decided that defendant ought to appear and answer under oath touching his property and to abide by and perform such other and further order of the said county judge as shall be made in the premises, on motion of J. W. Hicks, attorney for the plaintiffs, it is:

"Ordered that said *J. E. Huss* do appear before the said E. W. Murray on the 17th day of September, 1904, at 2 o'clock p. m., at his office in the city of Phillips, and there make answer under oath touching his property; that there is hereby imposed upon said *J. E. Huss* a fine of $10, and the sum of $15 as costs of this proceeding, which said sums shall be paid on or before the 17th day of September, 1904; that in default of said payment and said appearance the said *J. E. Huss* shall from and after the said 17th day of September, 1904, stand committed to the county jail of Price county until the terms of the above order shall have been complied with.

"Dated this 7th day of September, 1904."

On September 19, 1904, defendant obtained an order from the circuit court for Price county requiring plaintiffs to show cause on October 1, 1904, at a special term thereof—this being a general term of the Ashland county circuit court—to be

held in the courthouse in the city of Ashland, why the order of September 7, 1904, should not be vacated and set aside. Proceedings to enforce the order of September 7, 1904, were also ordered stayed. On September 22, 1904, defendant was ordered by a court commissioner of the circuit court for Price county to show cause on September 24, 1904, at a special term of the Price county circuit court, at the courthouse in the city of Ashland, why the order of September 7th should not be enforced, and why the order of September 19th, staying the proceedings, should not be vacated, and why the plaintiffs should not recover their costs. The court ordered the two orders to show cause to be taken up together, and they were so heard. On November 28, 1904, the court made the following order:

"At a special term of said court, held in the courthouse in the city of Ashland, Ashland county, Wisconsin, on the 24th day of September, A. D. 1904. Present: Hon. JOHN K. PARISH.

"The motion of the defendant to set aside the order of this court dated September 7, 1904, vacating and holding for naught said order imposing a fine of $10 upon and requiring the defendant to pay $15 costs of said motion, and the order to show cause issued to the plaintiff, by G. D. Myers, court commissioner for Price county, Wisconsin, on the 22d day of September, 1904, ordering the defendant to show cause before the court why the defendant should not pay the sum of $10 fine and $15 costs of proceeding as commanded by order of this court dated September 7, 1904; and why the order dated September 19th staying proceedings herein to enforce said order of September 7th should not be vacated and set aside; and why the plaintiffs should not recover their costs of this proceeding; and why the defendant should not be further punished for his failure to comply with the terms of said order of September 7, 1904, by order of the court came on to be heard before the court on the said 24th day of September, 1904, and J. W. Hicks, attorney for the plaintiffs, appeared and made argument in support of the contentions of the plaintiffs, and G. E. Schwindt, attorney for the defendant, appeared and made argument in support of the contentions of

the defendant, and the attorneys for the respective parties thereafter submitted their briefs in the matter, and the court having duly considered all points involved, and being advised in the matter, finds as follows:

## "Findings of Fact.

"That the defendant, *J. E. Huss,* is guilty of contempt in having failed and refused to appear before the Hon. E. W. Murray on the 16th day of August, A. D. 1904, pursuant to an order of said E. W. Murray dated on the 12th day of August, A. D. 1904, and duly served on the said *J. E. Huss,* as shown by proofs now on file herein, and there make answer under oath touching his property. That plaintiffs have suffered damages in the sum of $10 by the said failure of the said *J. E. Huss* to appear before the said E. W. Murray on the 16th day of August, 1904, and make answer under oath touching his said property. That the defendant, *J. E. Huss,* ought to appear before the said E. W. Murray, pursuant to order of this court, or order of said E. W. Murray, and there make answer under oath touching his property, and abide and perform such other and further order as shall be made herein. And it is hereby ordered that said order of September 7, 1904, be and the same is hereby modified so that it shall be and read as follows:

"Ordered, that within ten days from the date of service of notice of entry of this order on the defendant, *J. E. Huss,* he shall pay to J. W. Hicks, attorney for the plaintiffs, the sum of $25, being $10, their damages suffered by the failure of the said *J. E. Huss* to appear before the said E. W. Murray on the 16th day of August, 1904, and there make answer under oath touching his property, and $15, costs of the proceedings herein, dated on the 7th day of September, 1904. Further ordered, that the order herein staying proceedings to enforce the said order of September 7th be and the same is hereby vacated and set aside, and that the motion of the defendant herein to set aside the said order of September 7, 1904, is denied. Further ordered, that the said *J. E. Huss* shall on two days' notice, personally served on him by J. W. Hicks, attorney for the plaintiffs, and without further order or process, appear before the said E. W. Murray, county judge for Price county, and there make answer under oath touching his prop-

erty, and that he do further perform and abide such order as shall be made herein. Further ordered, that if the defendant, *J. E. Huss,* fails to pay the said sum of $25 as herein ordered within ten days from the date of service of entry of this order, the said *J. E. Huss* be imprisoned in the common jail of such county until the same be paid, not to exceed sixty days, or until further order of the court.

"Dated November 28, 1904."

This is an appeal from so much of the order of September 7, 1904, as imposes a fine upon defendant and orders his imprisonment in default of payment and his appearance before the court on September 17, 1904, and from the whole of the order of November 28, 1904.

*G. E. Schwindt,* for the appellant.

*J. W. Hicks,* for the respondents.

SIEBECKER, J. The proceedings upon which errors are assigned were instituted, under ch. 150, Stats. 1898, to punish the defendant as for a contempt for his neglect, or violation of duty, or misconduct, through which the rights and remedies of the judgment creditors in the action against him are alleged to have been impeded and prejudiced. The facts and circumstances of the alleged misconduct are set forth in the foregoing statement of facts. The course of the proceedings throughout the many different terms of the circuit court is not clearly presented in all particulars, but it appears sufficiently clear that the action was instituted against defendant in justice's court in Price county, that a transcript of a judgment in the action was filed in the office of the clerk of the circuit court for Price county, that execution issued and was returned wholly unsatisfied, and that the proceedings for defendant's examination were had as hereinbefore stated.

The first question arising is: Could the court by the order of November 28, 1904, review its adjudication made on September 7th? It appears that the court undertook to re-examine its adjudication of September 7th whereby it ordered the de-

fendant to appear and be examined as theretofore directed, to pay a fine, and in case of default in these matters to be imprisoned. It is manifest that the court attempted, by the punishment of the defendant as for a contempt, to enforce the same rights by the order of September 7, 1904, as by the adjudication of November 28th following, and that the adjudication in the latter order is a review of the former. This order of November 28th is attacked upon the ground that the court could not, at a term subsequent to the one at which the order was made, so review its adjudication of September 7th. The proceeding to examine defendant concerning his property was one pending and triable in the circuit court for Price county. The initial steps were taken before the county judge of Price county, exercising the powers of a court commissioner of the circuit court. The order of September 7th was made at a general term of the Taylor county circuit court, which, under the law, was a special term for the Price county circuit court, and the order of November 28th was made at a general term of the Ashland county circuit court, which was also a special term for the Price county circuit court. Under sec. 2424, Stats. 1898, as amended by ch. 6, Laws of 1905, each of these special terms of the Price county circuit court must be held to be a separate term of this court. *State ex rel. Ashland W. Co. v. Bardon,* 103 Wis. 297, 79 N. W. 226. They commence and end as terms of this court, respectively, with the opening and closing of the term in the county where they are actually held. Id. This made the term held in Ashland county a special term of the Price county circuit court and a subsequent term to the one held as a special term in Taylor county, and the order of November 28th, made at a session of the court in Ashland county as a special term of the Price county circuit court, was made at a term subsequent to the one at which the September 7th order was made. Since no judgment or final order in a special pro-

ceeding can be reviewed on its merits at a subsequent term of the court, except as provided by the statute authorizing the court to grant relief from a judgment or order or other proceeding made through mistake, inadvertence, surprise, or excusable neglect, we think it must follow that the order of November 28th was unauthorized, and hence void and of no effect. Sec. 2832, Stats. 1898; *Flanders v. Sherman,* 18 Wis. 575, 593; *Milwaukee Mut. L. & B. Soc. v. Jagodzinski,* 84 Wis. 35, 54 N. W. 102; *Pinger v. Vanclick,* 36 Wis. 141.

This leaves the order of September 7th operative as the final order in the proceeding. Its validity is assailed because it fails to comply with the provisions of the statutes providing for "proceedings to punish contempts to protect the rights of parties in civil actions." It is urged that the court erroneously by this order in the proceeding inflicted punishment on defendant as for a criminal contempt, and wrongfully and without adjudicating the questions involved imposed a fine for the alleged misconduct as for contempt in civil actions. The provisions of the statutes respecting the two classes of contempts, embodied in chs. 117 and 150, Stats. 1898, preserve a marked distinction in the remedies they afford and the procedure to be followed in each class. An examination of the decisions of this court involving these statutes shows a considerable contrariety of opinion as to their construction and scope, which it would be impracticable to set out in detail at this time. In their application of the statutes to the cases actually presented, with the exception of those specifically noted hereafter, the decisions rendered are in substantial harmony. There is substantial accord in the cases as to the infliction of penalties for criminal contempts under secs. 2565–2568, Stats. 1898. It is clear that the proceeding is to be prosecuted in the name of the state, either in a summary way or upon notice and inquiry; and, if it is adjudicated that the defendant is guilty of the alleged offense;

punishment by fine or imprisonment, or both, may be visited, within the limits provided, on the contemnor; and, if imprisonment is imposed, the commitment must specify the particular circumstances of the offense.    There is no question but that the moneys paid as fines under such proceedings go to the school fund as in criminal prosecutions, and that if imprisonment be ordered it is a commitment as a punishment for a criminal offense.    The following cases are illustrative of this class of contempts and the approved procedure for their punishment: *Haight v. Lucia,* 36 Wis. 355; *State ex rel. Mann v. Brophy,* 38 Wis. 413; *In re Murphey,* 39 Wis. 286; *State ex rel. Att'y Gen. v. Circuit Court,* 97 Wis. 1, 72 N. W. 193; *In re Savin,* 131 U. S. 267, 9 Sup: Ct. 699; *In re Chadwick,* 109 Mich. 588, 67 N. W. 1071.

In proceedings to punish as for a contempt under ch. 150, Stats. 1898, much confusion has arisen from attempts to restrict the scope of the statutes by limiting the remedy under them to an indemnity of the injured party in his private rights by a recovery of his money loss or injury, and by coercing performance of a duty unperformed, owing to the injured party, and still within the power of the contemnor to perform.    It is true that no misconduct is punishable under the provisions of this chapter unless it appears that the rights or remedies of a party in an action or proceeding depending or triable in the court or before one of its commissioners may thereby be defeated, impaired, impeded, or prejudiced.    The provisions, however, plainly authorize the court to punish by fine and imprisonment all acts of misconduct coming within them, though the misconduct may not pertain to the performance of a duty still within the power of the contemnor to perform, and though it may produce no actual loss or injury. The proceedings provided by these statutes seek to accomplish a twofold purpose: one, to enforce obedience of the decrees of the court; and the other, to indemnify parties to the action for their actual loss or injury and to compel the performance

of duties still within the contemnor's power.   If no actual
loss or injury is produced by the misconduct, then some pen-
alty must be inflicted for the contumacious conduct which re-
sults in defeating, impeding, or prejudicing the rights or
remedies of any party through disobedience of the court's
lawful commands.   No good reason is perceived why, in pro-
tecting the rights of parties in civil actions, a money penalty
or imprisonment may not appropriately be visited on the
offender in civil proceedings, even though it appears that no
actual pecuniary loss has resulted to the parties.   The means
are certainly well adapted to accomplish the purpose of pro-
tecting private rights and enforcing the court's commands in
respect thereto, and if any money paid by the contemnor as a
penalty for his misconduct is not due the party whose rights
have been impeded or prejudiced, because no pecuniary loss
resulted to him, we perceive no good reason why it may not
very properly be turned over to the school fund of the state,
as contemplated by secs. 3495, 3496, Stats. 1898.   We dis-
cover no force in the claim that this will result in a blending
of proceedings to punish contempts in civil actions with those
authorized for the punishment of contempts criminally.   The
two classes of proceedings seek to reach entirely different ob-
jects and are subject to wholly different procedures; the one
having all the characteristics and incidents of a civil proceed-
ing, while the other has those of a criminal prosecution in the
name of the state.

This construction of the statutes results in a conflict with
the observation made by this court in *In re Pierce*, 44 Wis.
411, 424, to the effect that the "fine" contemplated in the pro-
visions as to civil contempts is the same as "indemnity," thus
excluding the idea that a fine could be imposed as a penalty
merely, in a proceeding to protect the rights of parties in a
civil action.   This conclusion was based on the ground that
these statutes were taken from those of New York on the
same subject, and that the word "fine" as there used was in-

tended to cover only indemnity. A comparison of the provisions of this chapter with those of New York shows a marked difference in their context and evident meaning. The New York statute reads: "If an actual loss or injury shall have been produced to any party by the misconduct alleged, a fine shall be imposed sufficient to indemnify such party" [2 R. S. p. 557, pt. 3, tit. 13, § 21], while secs. 3489, 3490, Stats. 1898, provide that, if the party be guilty of the alleged misconduct, the court "shall proceed to impose a fine or to imprison him, or both, as the nature of the case shall require," and "if an actual loss or injury has been produced . . . the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, *instead* of imposing a fine." The difference in the meaning and intent of these statutes seems so obvious and clear that it will not permit of construction. We are constrained to hold that the opinion expressed in *In re Pierce, supra,* to the effect that "fine," as used in the various provisions of ch. 150, Stats. 1898, was intended to cover only the indemnity to the injured party, is erroneous and must be rejected; that the provisions of this chapter clearly warrant the imposition of a fine or imprisonment, or both, in cases where no actual loss or injury is shown; that in case of actual loss or injury resulting from the alleged misconduct, *instead* of imposing a fine, a sum is to be ordered paid to him to indemnify for such loss or injury; and when a fine is imposed it is in the nature of a penalty, which is to be paid into the state treasury to the credit of the school fund. *Poertner v. Russel,* 33 Wis. 193; *State ex rel. Mann v. Brophy,* 38 Wis. 413; *State ex rel. Lanning v. Lonsdale,* 48 Wis. 348, 4 N. W. 390; *In re Milburn,* 59 Wis. 24, 17 N. W. 965; *Cleveland v. Burnham,* 60 Wis. 16, 17 N. W. 126, 18 N. W. 190; *Smilh v. Weeks,* 60 Wis. 94, 18 N. W. 778; *Wright v. Wright,* 74 Wis. 439, 43 N. W. 145; *In re Rosenberg,* 90 Wis. 581, 63 N. W. 1065, 64 N. W. 299; *Warren v. Rosenberg,* 94 Wis. 523, 69 N. W. 339;

*State ex rel. Meggett v. O'Neill,* 104 Wis. 227, 80 N. W. 447; *In re Meggett,* 105 Wis. 291, 81 N. W. 419; *State ex rel. Rose v. Superior Court,* 105 Wis. 651, 81 N. W. 1046; *Jos. Schlitz B. Co. v. Washburn B. Asso.* 122 Wis. 515, 100 N. W. 832; Ralpalje, Contempts, § 21 *et seq.; Langdon v. Judges,* 76 Mich. 358, 43 N. W. 310; *Hendryx v. Fitzpatrick,* 19 Fed. 810.

Another objection suggested by appellant is that the order in question seeks to cover both a fine as for a criminal contempt and an indemnity for costs under the provisions of ch. 150, Stats. 1898. It is pertinent to observe that, as indicated by sec. 3480, Stats. 1898, and the succeeding sections, the procedure prescribed "to punish contempts to protect the rights of parties in civil actions," when committed out of the immediate presence of the court, is twofold in its character. The court may, in its discretion, in certain specified cases, and in all other cases upon proper showing must, either order the defendant to show cause before the court why he should not be punished, or issue an attachment to arrest and bring him before the court to answer for his misconduct. Under sec. 3481, Stats. 1898, the order to show cause can only be made in the court wherein the action or special proceeding is pending, and is equivalent to a notice of motion, and the court thenceforth proceeds as upon a motion in such action or special proceeding. But when no such order is made and an attachment is issued, then "it shall be deemed an original special proceeding against the accused in behalf of the state upon the relation of the complainant." It has been held that these courses of procedure are the same in form as proceedings in civil cases, while the proceedings under ch. 117, Stats. 1898, for the punishment of criminal contempts, are carried on from their inception as criminal prosecutions, with all the incidents of such actions, in the name of the state against the defendant. These forms aid in preserving the distinctions in prosecutions between the two classes of contempts and show

the legislative intent on the subject. The expression of the
court in *Haight v. Lucia,* 36 Wis. 355, to the effect that a
contempt proceeding is not to be entitled in the action out
of which it arose seems at variance with many well-considered
cases. This question was, however, set at rest by the enact-
ment of sec. 3481, Stats. 1898, as a new section to the Revised
Statutes of 1878, added subsequently to the decision in this
case. Furthermore, the observation in the same case, to the
effect that the injury sustained by a party through the alleged
misconduct is not a material matter in any contempt proceed-
ing, is not correct and must be held applicable only to pro-
ceedings to punish as for criminal contempts under ch. 117,
Stats. 1898; because, as we have shown, in proceedings to
punish contempts under ch. 150, Stats. 1898, the question of
indemnity for the injury produced to another party must be
considered, as the provisions of the chapter expressly enjoin
an adjudication and recovery for such injury. In the instant
case the proceeding upon which the order of September 7th
was based was an order to show cause in the action after
judgment in the same court. The defendant was in default.
At this stage of the proceedings it devolved on the court to de-
termine whether or not the alleged misconduct had been com-
mitted, and if the court found defendant guilty thereof it de-
volved upon the court to determine whether or not such "mis-
conduct was calculated to or actually did defeat, impede, or
prejudice the rights or remedies of any party in [the] action
or proceeding," and if it is so found, then a determination
must be made as to whether or not an actual loss or injury
had resulted to any of the parties from such misconduct. If
no such loss or injury resulted and it was so adjudged, then a
fine or imprisonment must be imposed as punishment for the
contempt, but if such loss or injury is adjudged to have re-
sulted, then no fine or imprisonment could be imposed, but
the court must order that defendant pay to the injured party
a sum to indemnify him and to pay his costs and disburse-

ments.   Secs. 3489, 3490, Stats. 1898.   In addition to these
penalties the court may in proper cases impose those provided
in sec. 3491, Stats. 1898, and coerce performance of acts and
duties still in the defendant's power to perform.   The ad-
judication of these questions is essential and a necessary step
to give validity to the proceeding.   Secs. 3489, 3490, Stats.
1898; *State ex rel. Chappell v. Giles,* 10 Wis. 101; *Shannon
v. State,* 18 Wis. 604; *In re Gill,* 20 Wis. 686; *Poertner v.
Russel,* 33 Wis. 193; *Lamonte v. Pierce,* 34 Wis. 483; *Witler
v. Lyon,* 34 Wis. 564; *Heymann v. Cunningham,* 51 Wis.
506, 8 N. W. 401; *McEvoy v. Gallagher,* 107 Wis. 331, 83
N. W. 633.

An examination of the record before us shows that the court
made no such adjudication.   The order directs that defend-
ant perform a duty theretofore omitted and still in his power
to perform, to pay a fine, and in default to stand committed
until the order should be obeyed.   The record fails to show
any adjudication from which it can be ascertained that de-
fendant was guilty of the alleged misconduct, and that the
misconduct was calculated to or actually did defeat, impede,
or prejudice the rights or the remedies of any of the parties;
and there is nothing to show whether or not the alleged mis-
conduct produced actual loss or injury.   The fatality of this
omission, under the provisions of the statutes, is manifest.   If
such a loss or injury was produced, then no fine or imprison-
ment could be imposed under sec. 3489, Stats. 1898, but a
money indemnity only could be ordered under sec. 3490,
Stats. 1898.   Upon these considerations it necessarily fol-
lows that no foundation was shown upon which the orders ap-
pealed from could properly be made, and they must therefore
be vacated and declared for naught.

*By the Court.*—The orders appealed from are reversed,
and the proceeding is remanded with directions to proceed
to a retrial of the issues involved in the hearing in which the
order of September 7, 1904, was entered.