Novo Industrial Corporation, Respondent, v. Nissen and others, Appellants.

*February 1—March 1, 1966.*

For the appellants there were briefs by *Mount & Keck* of Milwaukee, and oral argument by *Herbert L. Mount.*

For the respondent there was a brief by *Foley, Sammond & Lardner,* and oral argument by *Lyman A. Precourt,* all of Milwaukee.

WILKIE, J. On this appeal a number of procedural questions are presented in appellants' attack on the contempt judgment. No issue is raised concerning the substance of the finding of contempt on the part of the appellants but they do dispute the lower court's determination of both damages and costs which are assessed against appellants.

### Contempt Judgment.

The first broad issue presented is whether sec. 295.14, Stats., authorizes the entry of the contempt judgment against the appellants.

Appellants assert three reasons why the judgment of April 28, 1965, was null and void. *First,* because in the absence of extraordinary circumstances, only one judgment can be entered in any action. As a general proposition appellants' statement of the law is accurate. But the present case involves a separate proceeding brought pursuant to the provisions of ch. 295, Stats., to punish appellants for civil contempt. References to "disobedience to any . . . judgment" [1] and "before or after the judgment in the action" [2] indicate that ch. 295 allows additional relief where the original decree of the court is not obeyed. Furthermore, it was held in *State ex rel. Rodd v. Verage,*[3] that contempt proceedings culminate in a judgment, and recognized in *Wisconsin Employment Relations Board v. Mews,*[4] and *State ex rel. Ignasiak v. Franklin,*[5] that a judgment can be entered either finding contempt (*Mews*) or dismissing the contempt petition (*Franklin*) when prior judgments have been allegedly disobeyed. In *Franklin* the town sought, unsuccessfully, to obtain a contempt judgment against Ignasiak for disobeying the basic judgment. The trial court entered a second judgment dismissing the contempt petition. Appellants contend that *Franklin* is not controlling for the reason that the entry of this second judgment simply was erroneous. This view of *Franklin* begs the very issue. Appellants also contend that *Verage* is not apposite in that the special proceeding there was commenced by a writ of attachment which in turn calls for a termination by judgment. There is no reason why an attachment action brought under ch. 295 should end in a judgment while a proceeding initiated by an order to show cause should not.

---

[1] Sec. 295.01 (3), Stats.

[2] Sec. 295.05, Stats.

[3] (1922), 177 Wis. 295, 318, 187 N. W. 830.

[4] (1965), 29 Wis. (2d) 44, 138 N. W. (2d) 147.

[5] (1954), 268 Wis. 295, 67 N. W. (2d) 308.

*Second,* because Melvin and Hilda Nissen and Crane Manufacturing were not parties to the first suit, they could only be brought into the present action by means of a summons or original writ pursuant to sec. 262.02, Stats.[6] This contention, which would appear to challenge the jurisdiction of the court or binding effect of the judgment on these defendants rather than the validity of the judgment itself, is not persuasive. The procedures under ch. 295, Stats., which are applicable to "[p]arties to actions, . . . and all other persons . . . for any other disobedience to any lawful order, judgment or process of such court . . ."[7] were approved in *Emerson v. Huss.*[8] The affidavit accompanying the order to show cause is the equivalent of the complaint in the ordinary civil action,[9] and the alleged contemnor, whether or not a party to the original judgment, is thus afforded the same protections assured by that process.

*Third,* that sec. 295.14, Stats.,[10] only authorizes the trial court to issue an order and not a judgment in the present action. Sec. 295.14 does state that the "court shall order" the defendant to make indemnification for

---

[6] "262.02 CIVIL ACTION, HOW COMMENCED; SERVICE IN SPECIAL PROCEEDINGS. (1) *Civil Action.* A civil action in a court of record is commenced by the service of a summons or an original writ. . . ."

[7] Sec. 295.01 (3), Stats.

[8] (1906), 127 Wis. 215, 227, 106 N. W. 518.

[9] *Upper Lakes Shipping v. Seafarers' International Union* (1964), 23 Wis. (2d) 494, 128 N. W. (2d) 73.

[10] "295.14 INDEMNIFYING LOSS; FINE. If an actual loss or injury has been produced to any party by the misconduct alleged the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party to recover damages for such injury or loss. Where no such actual loss or injury has been produced the fine shall not exceed two hundred and fifty dollars over and above the costs and expenses of the proceedings."

any losses or injuries sustained. Unless the court has the power to support the "order" by means of a judgment, there would be substantial enforcement difficulties which would undermine the very purpose of the statute. Accordingly, this court has previously upheld judgments of contempt requiring the payment of damages under sec. 295.14, or its predecessor.[11]

### Damages.

The second major issue presented on this appeal concerns the amount of damages awarded to Novo against the appellants.

It is settled that the indemnification for actual loss which the complainant is entitled to under sec. 295.14, Stats., is that amount which could be recovered in a separate action.[12] The record establishes that Crane Manufacturing had sales of $432,062.34 in 1961, $1,406,-532.18 in 1962, and $1,015,561.65 in 1963. Melvin Nissen testified that Crane Manufacturing conducted approximately 75 percent of its 1961–1962 and 50 percent of its 1963 business with former customers of respondent (or Milwaukee Crane). The trial court arrived at the $48,985.08 damage award by applying a three percent profit factor to 75 percent of Crane Manufacturing's combined 1961–1962 sales and 25 percent of its 1963 total.

In attacking the trial court's determination of damages, appellants contend that it was improper to consider profits earned by Crane Manufacturing in arriving at the award. Although this evidence would be relevant

[11] *Upper Lakes Shipping v. Seafarers' International Union, supra,* footnote 9; *Stollenwerk v. Klevenow* (1912), 151 Wis. 355, 139 N. W. 203; *My Laundry Co. v. Schmeling* (1906), 129 Wis. 597, 109 N. W. 540.

[12] *My Laundry Co. v. Schmeling, supra,* footnote 11, at page 620; *State ex rel. Lanning v. Lonsdale* (1880), 48 Wis. 348, 367, 4 N. W. 390; *In re Pierce* (1878), 44 Wis. 411, 424.

in a suit based on a noncompetition clause,[13] this challenge is nonetheless misguided for the reason that the trial court's decisions of February 17 and April 19, 1965, and the findings of fact and conclusions of law entered on April 28, 1965, make it clear that the sales and not the profits of Crane Manufacturing furnished the multiplicand to measure respondent's damages while the multiplier was the three percent profit factor found by the court to have been used by Novo in estimating and bidding on crane sales during the years in question.

Appellants' principal ground for attacking the trial court's determination of damages is the alleged insufficiency of the evidence upon which to base a damage award. The general rule is that damages must be proved with reasonable certainty[14] and cannot be based on conjecture.[15] When damages are susceptible of precise proof or of estimation by someone having knowledge, this proof must be adduced.[16] However,

"Compliance with the rule of reasonable certainty does not make it necessary for the plaintiff to prove his savings with mathematical accuracy. It is sufficient if they can be estimated by the trier of the facts with a reasonable degree of certainty."[17]

[13] See 5 Williston, Contracts (rev. ed.), pp. 3917, 3918, sec. 1406.

[14] *De Sombre v. Bickel* (1963), 18 Wis. (2d) 390, 118 N. W. (2d) 868; *Maslow Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 70 N. W. (2d) 577. Restatement, 1 Contracts, p. 515, sec. 331, and p. 533, sec. 335.

[15] *Maslow Cooperage Corp. v. Weeks Pickle Co., supra,* footnote 14.

[16] *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. (2d) 13, 133 N. W. (2d) 235; *Maslow Cooperage Corp. v. Weeks Pickle Co., supra,* footnote 14.

[17] *Schubert v. Midwest Broadcasting Co.* (1957), 1 Wis. (2d) 497, 503, 85 N. W. (2d) 449. Other Wisconsin authority to this effect is cited in the Wisconsin Annotations to the Restatement of the Law, Contracts. See also 22 Am. Jur. (2d), Damages, p. 42, sec. 23.

In addition to Melvin Nissen's testimony that 75 percent of Crane Manufacturing's business in 1961–1962, and 50 percent in 1963, was carried on with respondent's old customers, the record discloses that between 1956 and 1960 respondent made total sales of $725,516 to one buyer, Bucyrus-Erie Company, and between 1957 and 1960 it made sales of $1,126,335 to another buyer, Reynolds Metal Corporation. Over the next three years respondent's sales to these two companies dipped to $28,696 and $19,377 respectively, while during the same period Crane Manufacturing enjoyed sales of $175,064 to Bucyrus-Erie and $344,899 to Reynolds. This information demonstrates the impact that appellants' conduct had on respondent's operations.

Appellants argue that actual damages could have been determined only by calling officials of the companies dealing with Crane Manufacturing in 1961–1962–1963 and having them explain their motivations for doing business with Crane Manufacturing. However, as recognized by the trial court, there are inherent difficulties in measuring the extent of Clarence Nissen's influence. For example a company executive might feel that it was independent judgment which dictated contracting with Crane Manufacturing while, in fact, the impetus was unconsciously provided by the mere presence of Nissen. Furthermore, appellants' formula implies that the decision to do business with Crane Manufacturing rests with one man who can take the stand and testify whether or not Nissen actually swung the deal. In reality, the decision was probably a collective effort and it would be well nigh impossible to sift through the echelon of corporate higher-ups and produce one person who could pinpoint the precise reasons underlying it. Finally, Crane Manufacturing did approximately $2,800,000 in business in the years 1961–1962–1963 and it is unrealistic to assume that the reasons behind every dollar of these sales can be effectively explained. The standard used by the trial court to ascertain damages is not perfect. But many

damage measures are inaccurate to a certain extent. Under the particular circumstances of this case the trial court set the damages as reasonably, fairly, and certainly as it could. It did not err in determining damages. Moreover, in its evaluation of damages the trial court undoubtedly acted in accordance with the well-established rule that by having caused the uncertainty of proof, the contract breacher is precluded from demanding a more precise measure of damages.[18]

Appellants' final contention is that the $22,002.06 in costs and expenses (including $17,600 in attorney's fees) awarded to respondent were not reasonable and necessary. This was not an ordinary case. The trial court said: "It required extensive investigation and preparation." The transcript of testimony filled over 1,100 pages. It was necessary to show that documents supposedly signed for Crane Manufacturing by Melvin Nissen were actually signed by Clarence Nissen. An engineer had to be hired to examine certain drawings and plans of Crane Manufacturing to ascertain whether they came from respondent's files. It was necessary to prove that several persons not parties to the original judgment were in contempt. The trial court felt that the "fees and expenses are reasonable and were necessarily incurred in the preparation for and the prosecution of these extensive proceedings." Under the circumstances we find no lack of authority for, or abuse of discretion in, the lower court's findings and, therefore, this portion of the judgment should be affirmed.

Respondent urges that the cause be remanded for further proceedings (under sec. 295.14, Stats.) to determine the amount of additional costs and expenses incurred by Novo either in the trial court or in this court in protection of the contempt judgment or in defense of the lower court's judgment or order on this appeal. Such request should be addressed to the trial court on remittitur. In

---

[18] *Schubert v. Midwest Broadcasting Co., supra*, footnote 17. 22 Am. Jur. (2d), Damages, p. 42, sec. 23.

winning affirmance of the judgment respondent is entitled to statutory costs on the appeal. The request for further costs and expenses which may require a supplemental judgment should be considered and ruled upon by the trial court.

*By the Court.*—Judgment and order affirmed.